**JUDGE HOLWELL**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**'07 CIV  5862**

PIRELLI ARMSTRONG TIRE
CORPORATION RETIREE MEDICAL
BENEFITS TRUST, Derivatively On Behalf
of MACY'S, INC.,

                Plaintiff,

    vs.

TERRY J. LUNDGREN, KAREN M.
HOGUET, SARA LEVINSON, CRAIG E.
WEATHERUP, JOSPEH NEUBAUER,
JOSPEH A. PICHLER, JOYCE M. ROCHE,
MEYER FELDBERG, MARNA C.
WHITTINGTON, KARL M. VON DER
HEYDEN and WILLIAM P. STIRITZ

                Defendants,

    -and-

MACY'S, INC., a Delaware
corporation,

             Nominal Defendant.

Case No.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
VIOLATIONS OF THE SECURITIES
EXCHANGE ACT OF 1934, BREACH OF
FIDUCIARY DUTY, WASTE OF
CORPORATE ASSETS AND UNJUST
ENRICHMENT



RECEIVED
JUN 20 2007
U.S.D.C. S.D. N.Y.
CASHIERS

DEMAND FOR JURY TRIAL

Plaintiff, by its attorneys, submits this shareholder derivative complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of Macy's, Inc. ("Macy's" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of federal and state law, including violations of the Securities Exchange Act of 1934 ("Exchange Act"). breaches of fiduciary duties, waste of corporate assets and unjust enrichment that occurred between February 2007 and the present (the "Relevant Period") and that have caused substantial losses to Macy's and other damages, such as to its reputation and goodwill.

2.     Macy's is the second-largest department store franchise in the United States with more than 850 department stores in 45 states. The Company operates stores under the names of Macy's and Bloomingdale's. The Company also sells its apparel and accessories, cosmetic, home furnishings and other consumer goods over the internet through macys.com, bloomingdales.com and Bloomingdale's By Mail.  Macy's was formerly known as Federated Department Stores, Inc. ("Federated").  During August 2005, Federated acquired May Department Stores Co. ("May") for $11 billion. Effective June 1, 2007, Federated changed its name to Macy's.

3.     On February 8, 2007, under defendants' direction, Macy's reported preliminary fourth quarter results that significantly exceeded analyst and investor expectations.  Specifically, the Company reported earnings of $1.60 per share that exceeded prior guidance of $1.50 per share. Further, the Company forecasted . 2% to 3% increase in same-store sales. As a result, Macy's share price increased dramatically from $41.06 per share on February 7, 2007 to $44.06 per share on February 14, 2007.

4.     During February 2007, Macy's sales would include sales for the first time from approximately 400 former May stores that had been converted into Macy's stores in September 2006. The May acquisition doubled the number of Macy's stores to over 800. Defendants directed Macy's to issue statements forecasting an increase of profitability at the old May stores due to toned down

promotional sales programs and offerings of more expensive merchandise and exclusive goods such as Coach handbags and Oscal de La Renta and Alfani branded products.

5.      During the Relevant Period, Macy's public statements portrayed the successful conversion of former May customers and improving sales at the May store locations. Although sales growth had declined towards the end of 2006, the Company's public statements continued to report a successful integration process for the former May stores. These statements promised increasing sales growth and wider operating margins.

6.      Macy's Relevant Period statements, however, failed to disclose that the May stores integration was actually failing. As a result, sales growth was continuing to decline and the Company's sales projections were grossly overstated.

7.      Macy's improper statements triggered an artificial inflation of the Company's share price. By March 23, 2007, Macy's share price climbed to as high as $46.70 per share. While Macy's shares were inflated, defendants directed the Company to repurchase over $2 billion of it own shares. Even worse, certain defendants sold their personal shares for over $19 million in proceeds.

8.      Then, between May 10, 2007 and May 15, 2007, Macy's disclosed that May's customers had actually rejected the store conversion and as a result the Company's sales had declined. In particular, Macy's cited the decision to dramatically limit the use of coupons at May stores as damaging sales.

9.      Macy's first quarter 2007 earnings of $5.92 billion fell well short of the Company's forecasted earnings of $6.1 billion. Moreover, the sales growth decline was not industry wide. Sales actually rose 2.2% at J.C. Penney, 4.3% at Target and 9.5% at Nordstroms during the same period.

10.     On these poor results, Macy's was forced to lower its second quarter sales forecast from $6.2 to $6.1 billion and its profit forecast of $0.40-$0.45 earnings per share to $0.35-$0.45 earnings per share. In the wake of the revised forecasts, Macy's value declined 18% from its Relevant Period high as investors lost confidence in the Company's former reputation for accurate financial reporting.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part out of the laws of the United States, including the Exchange Act. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.    This Court also has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

13.    This Court retains general jurisdiction over each named defendant who is a resident of New York.    Additionally, this Court has specific jurisdiction over each named non-resident defendant because these defendants maintain sufficient minimum contacts with New York to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Macy's maintains operations in New York and is traded on the New York Stock Exchange, and because the allegations contained herein are brought derivatively on behalf of Macy's, defendants' conduct was purposefully directed at New York. Defendants' conduct arose out of New York, where Macy's maintains corporate headquarters.    Finally, exercising jurisdiction over the named non-resident defendants is reasonable.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this Complaint, including the defendants' primary participation in the wrongful acts detailed herein, aiding and abetting, and conspiracy in violation of fiduciary duties owed to Macy's, occurred in substantial part in this District. Finally, defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

15.    Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust is, and was at times relevant hereto, an owner and holder of Macy's common stock.  Plaintiff is a citizen of Tennessee.

16.    Nominal defendant Macy's is a corporation organized and existing under the laws of the state of Delaware with headquarters located at 151 West 34th Street, New York, New York. Macy's operates department stores.  The Company's stores sell a range of merchandise, including men's, women's, and children's apparel; and accessories, cosmetics, home furnishings, and other consumer goods.

17.    Defendant Terry J. Lundgren ("Lundgren") is Macy's Chairman of the Board and has been since January 2004. Lundgren is also Macy's President and Chief Executive Officer and has been since February 2003. Because of Lundgren's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  Macy's paid Lundgren the following compensation:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Non-Qualified Deferred Compensation Earnings | All Other Compensation |
|---|---|---|---|---|---|---|
| 2006 | $1,383,333 | $6,651,653 | $3,464,675 | $2,704,800 | $1,199,550 | $243,106 |

Lundgren sold 325,000 of his personally held shares for $14,910,482.40 in proceeds while in possession of material, non-public information concerning Macy's.  Defendant Lundgen is a citizen of New York.

18.    Defendant Karen M. Hoguet ("Hoguet") is Macy's Executive Vice President and has been since June 2005. Hoguet is also Macy's Chief Financial Officer and has been since October 1997. Because of Hoguet's positions, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the

- 4 -

business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to her in connection therewith. Macy's paid Hoguet the following compensation:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Non-Qualified Deferred Compensation Earnings | All Other Compensation |
|---|---|---|---|---|---|---|---|
| 2006 | $741,667 | $25,000 | $1,235,294 | $877,552 | $724,500 | $296,471 | $79,848 |

Hoguet sold 84,000 of her personally held shares for $3,727,080.00 in proceeds while in possession of material, non-public information concerning Macy's. Defendant Hoguet is a citizen of Ohio.

19. Defendant Sara Levinson ("Levinson") is a Macy's director and has been since May 1997. Levinson is also a member of Macy's Compensation and Management Development Committee and has been since 2005. Because of Levinson's position, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to her in connection therewith. Levinson sold 7,000 of her personally held shares for $321,335.00 in proceeds while in possession of material, non-public information concerning Macy's. Defendant Levinson is a citizen of New York.

20. Defendant Craig E. Weatherup ("Weatherup") is a Macy's director and has been since August 1996. Weatherup is also Chairman of Macy's Compensation and Management Development Committee and has been since 2006. Because of Weatherup's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. Weatherup sold

7,000 of his personally held shares for $310,393.00 in proceeds while in possession of material, non-public information concerning Macy's.  Defendant Weatherup is a citizen of Arizona.

21.    Defendant Joseph Neubauer ("Neubauer") is a Macy's director and has been since September 1992. Neubauer is Vice Chairman of Macy's Audit Committee and has been since 2006. Neubauer is also a member of the Compensation and Management Development Committee and has been since 2004.  Because of Neubauer's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  Defendant Neubauer is a citizen of Pennsylvania.

22.    Defendant Joseph A. Pichler ("Pichler") is a Macy's director and has been since December 1997.  Pichler is also a member of Macy's Compensation and Management Development Committee and has been since 2004.   Because of Pichler's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith.  Defendant Pichler is a citizen of Ohio.

23.    Defendant Joyce M. Roche ("Roche") is a Macy's director and has been since February 2006. Roche is a member of the Audit Committee and has been since 2005.  Because of Roche's position, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees,

attendance at Board meetings and committees thereof, as well as reports and other information provided to her in connection therewith. Defendant Roche is a citizen of New York.

24.    Defendant Meyer Feldberg ("Feldberg") is a Macy's director and has been since May 1992. Feldberg is also Vice Chairman of Macy's Compensation and Management Development Committee and has been since 2006. Because of Feldberg's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. Defendant Feldberg is a citizen of New York.

25.    Defendant Marna C. Whittington ("Whittington") is a Macy's director and has been since June 1993. Whittington is also Chairman of Macy's Audit Committee and has been since 2004 and Vice Chairman of the Finance Committee and has been since 2006. Because of Whittington's position, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to her in connection therewith. Defendant Whittington is a citizen of Delaware.

26.    Defendant Karl M. von der Heyden ("von der Heyden") is a Macy's director and has been since February 1992. Von der Heyden is also a member of Macy's Compensation and Management Development Committee and has been since 2006 and Chairman of the Finance Committee and has been since 2006. Because of von der Heyden's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof,

- 7 -

as well as reports and other information provided to him in connection therewith. Defendant von der Heyden is a citizen of Connecticut.

27.    Defendant William P. Stiritz ("Stiritz") was a Macy's director from October 2005 to May 2007. Stiritz was also a member of Macy's Audit Committee from October 2005 to May 2007 and a member of the Finance Committee from October 2005 to May 2007. Because of Stiritz's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. Defendant Stiritz is a citizen of Colorado.

28.    The defendants identified in ¶¶17, 19-27 referred to herein as the "Director Defendants." The defendants identified in ¶¶17-18 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶17-20 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

29.    By reason of their positions as officers, directors and/or fiduciaries of Macy's and because of their ability to control the business and corporate affairs of Macy's, the Individual Defendants owed Macy's and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Macy's in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Macy's and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

30.    Each director and officer of the Company owes to Macy's and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual

Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Macy's, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company  Because of their advisory, executive, managerial and directorial positions with Macy's, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations and improper representations of Macy's.

32.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Macy's, and was at all times acting within the course and scope of such agency.

33.     To discharge their duties, the officers and directors of Macy's were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Macy's were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the Securities and Exchange Commission ("SEC") and the investing public;

(c)     conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of

- 9 -

financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    remain informed as to how Macy's conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)    ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

34.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Macy's, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period have been ratified by the remaining Individual Defendants who collectively comprised all of Macy's Board during the Relevant Period.

35.    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. As a result, Macy's has expended, and will continue to expend, significant sums of money.

36.    Moreover, these actions have irreparably damaged Macy's corporate image and goodwill. The Individual Defendants have misled the investing public, such that Macy's ability to raise equity capital or debt on favorable terms in the future is now impaired.

- 10 -

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

37.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.   In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

38.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly portraying its business prospects, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Macy's and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Macy's, regarding the Individual Defendants' management of Macy's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

39.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least February 2007 and continuing thereafter. During this time, the Individual Defendants caused the Company to conceal the true fact that Macy's was misrepresenting its business prospects.   In addition, defendants also made other specific, improper statements about Macy's financial performance and future business prospects, as alleged herein.

40.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Macy's common stock so they could: (i)

- 11 -

dispose of over \$19 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

41. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its business prospects and release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

42. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

43. The Individual Defendants by their fiduciary duties of care, good faith and loyalty owed to Macy's a duty to insure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information to be either disclosed or omitted from the Company's public statements.

44. This material, non-public information principally included the fact that the May integration was failing and would result in lower sales. Furthermore, defendants Neubauer, Roche, Whittington and Stiritz, as members of the Audit Committee, had a special duty to know and understand this material information as set out in the Audit Committee's charter which provides that the committee is responsible for reviewing and discussing: (i) the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies; and (ii) the adequacy of the Company's internal and disclosure controls.

- 12 -

45.     Defendants Lundgren and Huguet, as officers of Macy's, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, defendants Lundgren, Neubauer, Roche, Whittington, Pichler, Feldberg, von der Heyden, Levinson, Weatherup and Stiritz, as directors of Macy's had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period, as well as at meetings of committees of the Board.  Despite these duties, the Individual Defendants negligently, recklessly and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by Macy's to the investing public and the Company's shareholders during the Relevant Period.

46.     On February 8, 2007, the Individual Defendants caused or allowed the Company to issue a press release titled "Federated's January Same-Store Sales up 8.6% - Company Raises Earnings Guidance for Fiscal 2006 Fourth Quarter."  The press release proclaimed increased guidance and sales prospects for the coming quarter and momentum carrying into 2007. The release stated in relevant part:

> The company *increased its guidance* for earnings from continuing operations for the fourth quarter of fiscal 2006.  Excluding merger integration costs and related inventory valuation adjustments, the company now expects fourth quarter earnings from continuing operations of $1.55 to $1.60 per share, compared with previous guidance of $1.40 to $1.50 per share.  The revised guidance includes a one-time gain of 6 cents per share related to completion of its debt tender offer, as announced in December 2006.
>
> "January represented a strong finish to our fiscal year, with an outstanding performance in legacy Macy's and Bloomingdale's stores, as well as continued *improvement in sales trends* at former May Company locations," said Terry J. Lundgren, Federated's chairman, president and chief executive officer. "Sales were stimulated in part by redemption of gift cards sold during the holiday season and the arrival of cold weather in much of the country."
>
> "All in all, 2006 was a great year in which we transformed our company and embraced an extraordinary amount of positive change while exceeding our initial earnings targets," Lundgren said. "This is a testament to the strategy we have put in place and to the strength of our organization.  We look forward to this *momentum carrying into 2007*."
>
> Federated expects same-store sales to *increase by 2 percent to 3 percent* in February.  Beginning in February, Federated's same-store sales will include former May Company locations, as well as legacy Macy's and Bloomingdale's stores, that have been open for more than one full fiscal year.

- 13 -

## SHARE REPURCHASE

47.     On February 26, 2007, Macy's Board of Directors approved an additional $4 billion authorization to the Company's share repurchase program. Immediately after the authorization, under the Individual Defendants' direction, the Company repurchased 45 million of its own shares for approximately $2 billion.

## FURTHER IMPROPER STATEMENTS

48.     On February 27, 2 07, the Individual Defendants caused or allowed the Company to issue a press release reporting its fiscal 2006 earnings. The press release was titled "Federated Reports Fourth Quarter Earnings of $1.45 Per Diluted Share from Continuing Operations; Diluted EPS From Continuing Operations, Excluding Merger Integration Costs and Inventory Valuation Adjustments, is $1.66 - Exceeding the Company's Guidance." The press release stated in relevant part:

> Federated Department Stores, Inc. today reported diluted earnings per share from continuing operations of $1.45 for the 14-week fourth quarter of 2006, ended Feb. 3, 2007. This compares with diluted earnings per share from continuing operations of $1.22 for the 13-week period ended Jan. 28, 2006.
>
> Excluding May Company merger integration costs and related inventory valuation adjustments of $177 million ($110 million after tax or 21 cents per diluted share), fourth quarter diluted earnings per share from continuing operations were $1.66. This *exceeds the company's prior guidance*, provided on Feb. 8, 2007, for earnings of $1.55 to $1.60 per share excluding merger integration costs and related inventory valuation adjustments. Earnings for the 2006 fourth quarter include a gain of approximately $54 million ($34 million after tax or 6 cents per diluted share) related to completion of the company's debt tender offer, as previously announced.

49.     On March 8, 2007, the Individual Defendants caused or allowed the Company to issue a press release titled "Federated's February Same-Store Sales Up 1.2%." The press release reported flat sales for the month of February. The press release blamed the lacking sales on the weather. Moreover, the press release forecasted a 2.5% to 4% increase in sales over March and April 2007. The press release stated in relevant part:

> Federated Department Stores, Inc. today reported total sales of $1.802 billion for the four weeks ended March 3, 2007, essentially flat compared to total sales of $1.800 billion in the same period last year. On a same-store basis, Federated's sales for February were up 1.2 percent. This compares with the company's guidance for a same-store sales increase of 2 percent to 3 percent in February.

"Sales in February were impacted by a series of *snow and ice storms* in the eastern half of the U.S., including those during the important selling days immediately preceding Valentine's Day. The geographic region that was most affected by adverse weather was the Upper Midwest," said Terry J. Lundgren, Federated's chairman, president and chief executive officer. "Aside from the weather, we were pleased with performance of both the new and legacy Macy's stores."

Federated expects same-store sales in both March and April *to increase by 2.5 percent to 4 percent*.

Beginning in February and now ongoing, Federated's same-store sales include former May Company loca ons, as well as legacy I 'acy's and Bloomingdale's stores, that have been open for more than one full fiscal year.

50.     On April 4, 2007, the Individual Defendants caused or allowed the Company to issue

a press release titled "Federated Invests for Continued Growth in Direct-to-Consumer Businesses."

The press release forecasted rapid sales growth including more than a billion in sales by 2008. The

press release stated in relevant part:

> Federated Department Stores, Inc. today announced an additional capital investment of approximately $100 million in 2007-2008 to support continued growth in its direct-to-consumer businesses, including macys.com, bloomingdales.com, Bloomingd le's By Mail, macysweddingchannel.com and bloomingdales wedding channel.com. The amount is incorporated in Federated's total capital spending plans, which include $1.2 billion in 2007 and $1.1 billion in 2008.
>
> "Our online sales *continue to grow at a rapid pace* as the national expansion of Federated and Bloomingdale's attracts new customers to our stores, Web sites and catalog," said Terry J. Lundgren, Federated's chairman, president and chief executive officer. "In particular, we are seeing exceptional growth in online sales in new Macy's markets such as Illinois, Michigan, Minnesota, Missouri, Oklahoma, Texas and Utah.
>
> "Currently, we anticipate our direct-to-consumer businesses will grow to *more than $1 billion in sales by 2008 from about $620 million in 2006*," he said. "Supporting this pace of growth requires additional investment so we can scale up the volume of business while enhancing customer service, delivery efficiency and online site functionality."
>
> New investments will include the building of a 600,000-square-foot distribution center in Goodyear, AZ, which will serve primarily as the West Coast shipping point for macys.com. Construction on this facility will begin in spring 2007 and is scheduled for completion in spring 2008. The facility will employ more than 500 full-time associates when completed and fully operational. The Goodyear distribution center is designed to accommodate a future expansion of 400,000 square feet.
>
> Also included in the 2007-2008 capital plan are an expansion of the direct-to-consumer warehouse management system, improvements to the order management system and enhancements to the macys.com Web site to support projected increases in customer traffic.

- 15 -

51.     On April 12, 2007, the Individual Defendants caused or allowed the Company to

issue a press release titled "Federated's March Same-Store Sales up 2.3%." The press release

announced the Company's sales for March 2007, which fell short of expectations. The press release

attributed the sales miss to weakness in home-related merchandise categories. The release stated in

relevant part:

> Federated Department Stores, Inc. today reported total sales of $2.288 billion for the
> five weeks ended April 7, 2007, an increase of 1 5 percent compared to total sales of
> $2.255 billion in the same period last year. On a same-store basis, Federated's sales
> for March were up 2.3 percent. This compares with the company's guidance for a
> same-store sales increase of 2.5 percent to 4 percent in March.
>
> For the year to date, Federated's sales totaled $4.089 billion, up 0.8 percent
> from total sales of $4.055 billion in the first nine weeks of 2006. On a same-store
> basis, Federated's year-to-date sales were up 1.8 percent.
>
> "March sales fell just short of our expectations in most regions across the
> country, largely *attributable to weakness in home-related merchandise categories*,"
> said Terry J. Lundgren, Federated's chairman, president and chief executive officer.
> "Unseasonably cold weather as new spring merchandise flowed into the stores in the
> pre-Easter period also contributed to disappointing sales in the month."
>
> Federated continues to expect same-store sales in April to increase by 2 5
> percent to 4 percent. Sales in the first quarter are expected to be at the low end of
> previous guidance of $6 billion to $6.1 billion.

## DISAPPOINTING APRIL SALES

52.     On May 10, 2007, Macy's shareholders and the market learned that sales did not

increase for April 2007 as the Company's prior statements had forecasted. In fact, the Company's

April same-store sales were down 2.2%. Defendant Lundgren blamed the loss of sales on a shifted

promotional event. Specifically, Lundgren stated that "'April sales were disappointing across the

country in both new and legacy Macy's stores'" and that a "'*major promotional event* that was shifted

from May last year to April this year did not produce the results we expected.'" A Macy's press

release issued on that day stated that the Company expected same-store sales in May 2007 "to be in

the range of flat to down 2 percent, which reflects *the promotional event shift* from May into April."

## THE TRUTH IS REVEALED

53.     On May 16, 2007, Macy's issued a press release announcing disappointing financial

results for the first fiscal quarter of 2007. Despite the improper statements' forecasts of increased

momentum and sales, defendant Lundgren stated that "sales in the new Macy's locations were

- 16 -

disappointing in the quarter ...." The press release further disclosed that customers of the former May stores had rejected the rapid conversion, that sales at the Company's new Macy's stores had declined during the first quarter, and that, in particular, the Company's decision to dramatically cut the number of days coupons could be used at the former May locations had badly damaged sales.

54.    First quarter 2007 revenue significantly missed the Company's earlier forecast of $6.1 billion, coming in 2% lower at $5.92 billion. Sales at stores open at least a year rose only 0.6%, missing the Company's guidance of a 2.5% to 3.5% gain. Meanwhile, same-store sales rose 2.2% at J.C. Penney, 4.3% at Target and 9.5% at Nordstroms. The Company lowered its second quarter 2007 sales forecast from $6.2 to $6.1 billion and its profit forecast from $0.40-$0.45 per share to $0.35-$0.45 per share.

55.    On this news, Macy's stock price plunged to a price nearly 18% lower than its Relevant Period high, erasing over $3 billion in market capitalization.

### REASONS THE STATEMENTS WERE IMPROPER

56.    Macy's Relevant Period statements failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

(a)    The integration of the former May's stores would result in lower sales and thus lower profits;

(b)    Macy's forecasted sales and earnings were grossly inaccurate; and

(c)    Macy's fiscal first quarter 2007 results would not meet the expectations of analysts, investors and shareholders.

### DAMAGES TO THE COMPANY

57.    As a result of the Individual Defendants' improprieties, Macy's disseminated improper statements concerning its business prospects as alleged above.

58.    As a direct and proximate result of the Individual Defendants' actions as alleged above, Macy's market capitalization has been damaged by over $3 billion. At the same time that the Individual Defendants were causing Macy's to suffer such devastation of its market capitalization,

the Insider Selling Defendants were profiting by selling over $19 million of their personally held stock.

59.    Further, as a direct and proximate result of Individual Defendants' actions, Macy's has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel;

(b)    Costs incurred as a result of securities class actions filed against the Company by investors, who lost billions as a result of being mislead by the improper statements;

(c)    Over $2 billion spent to repurchase Macy's shares at artificially inflated prices; and

(d)    Costs incurred from compensation and benefits paid to the defendants who have breached their fiduciary duties to Macy's.

60.    Moreover, these actions have irreparably damaged Macy's corporate image and goodwill.  For at least the foreseeable future, Macy's will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Macy's ability to raise equity capital or debt on favorable terms in the future is now impaired.

### ILLEGAL INSIDER SELLING

61.    While in possession of the undisclosed material adverse information, the Insider Selling Defendants sold the following shares of Macy's stock:

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| BELSKY | 3/21/2007 | 10,000 | $46.15 | $461,500.00 |
|  |  | 10,000 |  | $461,500.00 |
|  |  |  |  |  |
| BRODERICK | 3/2/2007 | 4,600 | $44.28 | $203,688.00 |
| BRODERICK | 3/2/2007 | 24,000 | $44.29 | $1,062,960.00 |
| BRODERICK | 3/27/2007 | 10,000 | $46.23 | $462,300.00 |
| BRODERICK | 3/27/2007 | 4,400 | $46.24 | $203,456.00 |
| BRODERICK | 3/27/2007 | 11,400 | $46.25 | $527,250.00 |
| BRODERICK | 3/27/2007 | 4,200 | $46.26 | $194,292.00 |
| BRODERICK | 3/27/2007 | 1,400 | $46.29 | $64,806.00 |

| | | | | |
|---|---|---|---|---|
| BRODERICK | 3/27/2007 | 2,600 | $46.30 | $120,380.00 |
| BRODERICK | 3/27/2007 | 1,200 | $46.33 | $55,596.00 |
| BRODERICK | 3/30/2007 | 4,600 | $45.50 | $209,300.00 |
| | | **68,400** | | **$3,104,028.00** |
| | | | | |
| CODY | 3/2/2007 | 120,000 | $44.42 | $5,330,400.00 |
| CODY | 3/29/2007 | 900 | $44.89 | $40,401.00 |
| CODY | 3/29/2007 | 3,100 | $44.90 | $139,190.00 |
| CODY | 3/29/2007 | 300 | $44.91 | $13,473.00 |
| CODY | 3/29/2007 | 700 | $44.92 | $31,444.00 |
| CODY | 3/29/2007 | 2,100 | $44.94 | $94,374.00 |
| CODY | 3/29/2007 | 1,900 | $44.95 | $85,405.00 |
| CODY | 3/29/2007 | 1,000 | $44.96 | $44,960.00 |
| CODY | 3/29/2007 | 1,000 | $44.97 | $44,970.00 |
| CODY | 3/29/2007 | 1,000 | $44.99 | $44,990.00 |
| CODY | 3/29/2007 | 1,000 | $45.00 | $45,000.00 |
| CODY | 3/29/2007 | 2,100 | $45.01 | $94,521.00 |
| CODY | 3/29/2007 | 3,200 | $45.02 | $144,064.00 |
| CODY | 3/29/2007 | 3,900 | $45.03 | $175,617.00 |
| CODY | 3/29/2007 | 2,100 | $45.04 | $94,584.00 |
| CODY | 3/29/2007 | 4,300 | $45.05 | $193,715.00 |
| CODY | 3/29/2007 | 5,100 | $45.06 | $229,806.00 |
| CODY | 3/29/2007 | 300 | $45.07 | $13,521.00 |
| CODY | 3/29/2007 | 10,800 | $45.10 | $487,080.00 |
| CODY | 3/29/2007 | 2,500 | $45.11 | $112,775.00 |
| CODY | 3/29/2007 | 8,400 | $45.12 | $379,008.00 |
| CODY | 3/29/2007 | 1,700 | $45.13 | $76,721.00 |
| CODY | 3/29/2007 | 600 | $45.14 | $27,084.00 |
| CODY | 3/29/2007 | 5,800 | $45.15 | $261,870.00 |
| CODY | 3/29/2007 | 1,200 | $45.16 | $54,192.00 |
| | | **185,000** | | **$8,259,165.00** |
| | | | | |
| COLE | 3/26/2007 | 13,800 | $46.30 | $638,940.00 |
| COLE | 3/26/2007 | 11,600 | $46.31 | $537,196.00 |
| COLE | 3/26/2007 | 14,400 | $46.32 | $667,008.00 |
| COLE | 3/26/2007 | 36,400 | $46.33 | $1,686,412.00 |
| COLE | 3/26/2007 | 12,300 | $46.34 | $569,982.00 |
| COLE | 3/26/2007 | 13,600 | $46.35 | $630,360.00 |
| COLE | 3/26/2007 | 17,100 | $46.36 | $792,756.00 |
| COLE | 3/26/2007 | 2,100 | $46.37 | $97,377.00 |
| COLE | 3/26/2007 | 700 | $46.38 | $32,466.00 |
| COLE | 3/26/2007 | 1,000 | $46.39 | $46,390.00 |
| COLE | 3/26/2007 | 2,000 | $46.40 | $92,800.00 |
| COLE | 3/26/2007 | 3,700 | $46.41 | $171,717.00 |
| COLE | 3/26/2007 | 2,500 | $46.42 | $116,050.00 |
| COLE | 3/26/2007 | 5,800 | $46.43 | $269,294.00 |
| COLE | 3/26/2007 | 1,900 | $46.45 | $88,255.00 |
| COLE | 3/26/2007 | 1,500 | $46.46 | $69,690.00 |
| COLE | 3/26/2007 | 1,600 | $46.47 | $74,352.00 |
| COLE | 3/26/2007 | 2,000 | $46.48 | $92,960.00 |

| | | | | |
|---|---|---|---|---|
| COLE | 3/28/2007 | 8,950 | $45.33 | $405,703.50 |
| COLE | 3/28/2007 | 1,000 | $45.64 | $45,640.00 |
| COLE | 3/28/2007 | 900 | $45.69 | $41,121.00 |
| COLE | 3/28/2007 | 7,100 | $45.70 | $324,470.00 |
| COLE | 3/28/2007 | 2,300 | $45.71 | $105,133.00 |
| COLE | 3/28/2007 | 1,400 | $45.72 | $64,008.00 |
| COLE | 3/28/2007 | 900 | $45.73 | $41,157.00 |
| COLE | 3/28/2007 | 1,900 | $45.74 | $86,906.00 |
| COLE | 3/28/2007 | 6,400 | $45.75 | $292,800.00 |
| COLE | 3/28/2007 | 5,200 | $45.76 | $237,952.00 |
| COLE | 3/28/2007 | 100 | $45.77 | $4,577.00 |
| COLE | 3/28/2007 | 500 | $45.78 | $22,890.00 |
| COLE | 3/28/2007 | 500 | $45.79 | $22,895.00 |
| COLE | 3/28/2007 | 1,300 | $45.80 | $59,540.00 |
| COLE | 3/28/2007 | 800 | $45.81 | $36,648.00 |
| COLE | 3/28/2007 | 700 | $45.82 | $32,074.00 |
| COLE | 3/28/2007 | 1,500 | $45.86 | $68,790.00 |
| | | **185,450** | | **$8,566,309.50** |
| | | | | |
| GROVE | 3/2/2007 | 42,000 | $44.31 | $1,861,020.00 |
| GROVE | 3/2/2007 | 30,000 | $44.31 | $1,329,300.00 |
| GROVE | 3/26/2007 | 239 | $46.28 | $11,060.92 |
| GROVE | 4/17/2007 | 3,000 | $45.14 | $135,420.00 |
| GROVE | 4/17/2007 | 4,500 | $45.15 | $203,175.00 |
| GROVE | 4/17/2007 | 1,500 | $45.16 | $67,740.00 |
| GROVE | 4/17/2007 | 1,000 | $45.19 | $45,190.00 |
| GROVE | 4/17/2007 | 2,900 | $45.20 | $131,080.00 |
| GROVE | 4/17/2007 | 2,500 | $45.21 | $113,025.00 |
| GROVE | 4/17/2007 | 4,200 | $45.22 | $189,924.00 |
| GROVE | 4/17/2007 | 8,900 | $45.23 | $402,547.00 |
| GROVE | 4/17/2007 | 3,500 | $45.24 | $158,340.00 |
| GROVE | 4/17/2007 | 300 | $45.26 | $13,578.00 |
| GROVE | 4/17/2007 | 3,100 | $45.27 | $140,337.00 |
| GROVE | 4/17/2007 | 1,900 | $45.28 | $86,032.00 |
| GROVE | 4/17/2007 | 6,100 | $45.29 | $276,269.00 |
| GROVE | 4/17/2007 | 4,300 | $45.30 | $194,790.00 |
| GROVE | 4/17/2007 | 3,200 | $45.31 | $144,992.00 |
| GROVE | 4/17/2007 | 15,800 | $45.32 | $716,056.00 |
| GROVE | 4/17/2007 | 12,500 | $45.33 | $566,625.00 |
| GROVE | 4/17/2007 | 14,700 | $45.34 | $666,498.00 |
| GROVE | 4/17/2007 | 10,200 | $45.35 | $462,570.00 |
| GROVE | 4/17/2007 | 5,500 | $45.36 | $249,480.00 |
| GROVE | 4/17/2007 | 12,700 | $45.37 | $576,199.00 |
| GROVE | 4/17/2007 | 3,600 | $45.38 | $163,368.00 |
| GROVE | 4/17/2007 | 600 | $45.39 | $27,234.00 |
| GROVE | 4/17/2007 | 3,500 | $45.40 | $158,900.00 |
| GROVE | 4/18/2007 | 523 | $44.95 | $23,508.85 |
| | | **202,762** | | **$9,114,258.77** |
| | | | | |
| HOGUET, KAREN M. | 3/2/2007 | 84,000 | $44.37 | $3,727,080.00 |

| | | 84,000 | | $3,727,080.00 |
|---|---|---|---|---|
| | | | | |
| KRONICK | 3/9/2007 | 53,800 | $44.50 | $2,394,100.00 |
| KRONICK | 3/12/2007 | 60,700 | $44.50 | $2,701,150.00 |
| | | 114,500 | | $5,095,250.00 |
| | | | | |
| LEVINSON, SARA | 3/21/2007 | 3,500 | $45.80 | $160,300.00 |
| LEVINSON, SARA | 4/9/2007 | 3,500 | $46.01 | $161,035.00 |
| | | 7,000 | | $321,335.00 |
| | | | | |
| LUNDGREN, TERRY J. | 2/28/2007 | 45,580 | $44.48 | $2,027,398.40 |
| LUNDGREN, TERRY J. | 3/22/2007 | 22,600 | $46.00 | $1,039,600.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 5,000 | $46.00 | $230,000.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 37,300 | $46.01 | $1,716,173.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 3,100 | $46.01 | $142,631.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 4,600 | $46.02 | $211,692.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 2,200 | $46.03 | $101,266.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 2,100 | $46.03 | $96,663.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 6,100 | $46.04 | $280,844.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 2,600 | $46.04 | $119,704.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 23,200 | $46.05 | $1,068,360.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 6,820 | $46.05 | $314,061.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 7,300 | $46.06 | $336,238.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 4,600 | $46.06 | $211,876.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 11,200 | $46.07 | $515,984.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 5,600 | $46.07 | $257,992.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 5,400 | $46.08 | $248,832.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 100 | $46.08 | $4,608.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 6,600 | $46.09 | $304,194.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 8,400 | $46.10 | $387,240.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 4,400 | $46.10 | $202,840.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 12,100 | $46.11 | $557,931.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,400 | $46.11 | $64,554.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 5,700 | $46.12 | $262,884.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 800 | $46.12 | $36,896.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 6,000 | $46.13 | $276,780.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 200 | $46.13 | $9,226.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 8,400 | $46.14 | $387,576.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 10,200 | $46.15 | $470,730.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 4,300 | $46.16 | $198,488.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,200 | $46.17 | $55,404.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 3,800 | $46.18 | $175,484.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 9,200 | $46.20 | $425,040.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 3,800 | $46.21 | $175,598.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 7,000 | $46.22 | $323,540.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 900 | $46.23 | $41,607.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,000 | $46.24 | $46,240.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,200 | $46.25 | $55,500.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,800 | $46.26 | $83,268.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 8,700 | $46.30 | $402,810.00 |

| | | | | |
|---|---|---|---|---|
| LUNDGREN, TERRY J. | 3/22/2007 | 4,100 | $46.31 | $189,871.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 2,400 | $46.32 | $111,168.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,300 | $46.33 | $60,229.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,900 | $46.34 | $88,046.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 1,300 | $46.35 | $60,255.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 9,400 | $46.36 | $435,784.00 |
| LUNDGREN, TERRY J. | 3/22/2007 | 2,100 | $46.37 | $97,377.00 |
| | | 325,000 | | $14,910,482.40 |
| | | | | |
| WEATHERUP, CRAIG E. | 3/15/2007 | 2,000 | $44.30 | $88,600.00 |
| WEATHERUP, CRAIG E. | 3/15/2007 | 1,700 | $44.32 | $75,344.00 |
| WEATHERUP, CRAIG E. | 3/15/2007 | 300 | $44.33 | $13,299.00 |
| WEATHERUP, CRAIG E. | 3/15/2007 | 2,000 | $44.38 | $88,760.00 |
| WEATHERUP, CRAIG E. | 3/15/2007 | 1,000 | $44.39 | $44,390.00 |
| | | 7,000 | | $310,393.00 |
| | | | | |
| **TOTAL:** | | **1,189,112** | | **$53,869,801.67** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.    Plaintiff brings this action derivatively in the right and for the benefit of Macy's to redress injuries suffered, and to be suffered, by Macy's as a direct result of the breaches of fiduciary duty, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Macy's is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

63.    Plaintiff will adequately and fairly represent the interests of Macy's in enforcing and prosecuting its rights.

64.    Plaintiff is and was an owner of the stock of Macy's during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

65.    The current Board of Macy's consists of the following nine individuals: defendants Lundgren, Neubauer, Roche, Whittington, Pichler, Feldberg, von der Heyden, Levinson and Weatherup. Plaintiff has not made any demand on the present Board of Macy's to institute this action because such a demand would be a futile, wasteful and useless act.

66.    Each of the defendants knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information regarding the improper accounting as a result of their access to and review of internal corporate documents,

attendance at Board meetings, and conversations and connections with other corporate officers, employees and directors. However, the following current members of the Macy's Board participated in the illegal insider selling:

    (a)    Defendant Lundgren sold 325,000 of his personally held shares for $14,910,482.40 in proceeds while in possession of material, non-public information;

    (b)    Defendant Levinson sold 7,000 of her personally held shares for $321,335 in proceeds while in possession of material, non-public information; and

    (c)    Defendant Weatherup sold 7,000 of his personally held shares for $310,393 in proceeds while in possession of material, non-public information.

Because these defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested. Also, these defendants face a sufficiently substantial likelihood of liability for breach of their fiduciary duties for insider selling. Since the defendants have breached their fiduciary duties and are interested, any demand upon them is futile.

    67.    Defendants Neubauer, Roche and Whittington were, during the Relevant Period, members of the Audit Committee. The Audit Committee's charter charges the Audit Committee with reviewing and discussing: (i) the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies; and (ii) the Company's disclosure and internal controls. Thus, the Audit Committee was responsible for overseeing and directly participating in Macy's financial reporting process. Accordingly, defendants Neubauer, Roche and Whittington breached their fiduciary duties of due care, loyalty and good faith because the Audit Committee participated in the preparation of improper statements and earnings press releases that contained false and/or misleading material information. Particularly, these defendants reviewed and failed to correct Macy's improper earnings press releases and interim and annual financial statements described above. Thus, Neubauer, Roche and Whittington face a sufficiently substantial likelihood of liability for their breach of fiduciary duties any demand upon them is futile.

    68.    Defendants Lundgren, Neubauer, Roche, Whittington, Pichler, Feldberg, von der Heyden, Levinson and Weatherup as members of the Board during the Relevant Period authorized

the buyback of over $2 billion of the Company's shares at artificially inflated prices. The Board's decision to authorize the share buybacks was not the product of valid business judgment. Further, defendants engaged in self-dealing in that they sold their personally held shares while directing the Company to buyback shares. Accordingly, demand is futile.

69.    The principal professional occupation of Lundgren is his employment with Macy's, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Specifically, Lundgren was paid the following compensation at times relevant hereto:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Non-Qualified Deferred Compensation Earnings | All Other Compensation |
|---|---|---|---|---|---|---|
| 2006 | $1,383,333 | $6,651,653 | $3,464,675 | $2,704,800 | $1,199,550 | $243,106 |

Accordingly, Lundgren lacks independence from Pichler, Neubauer, Feldberg, von der Heyden, Levinson and Weatherup, defendants who are not disinterested and/or independent and who exert influence over Lundgren's compensation by virtue of their positions on the Compensation and Management Development Committee.   The Compensation and Management Development Committee has the authority to review and approve Lundgren's base salary, bonus and equity compensation.  This lack of independence renders defendant Lundgren incapable of impartially considering a demand to commence and vigorously prosecute this action.

70.    Because the members of the Compensation and Management Development Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Pichler, Neubauer, Feldberg, von der Heyden, Levinson and Weatherup.  To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Lundgren, Roche and Whittington is futile.

71.    Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein.

72.    The Director Defendants of Macy's, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Macy's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.

- 24 -

73.    In order to bring this suit, all of the directors of Macy's would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

74.    The acts complained of constitute violations of the fiduciary duties owed by Macy's officers and directors and these acts are incapable of ratification.

75.    Each of the Director Defendants of Macy's authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

76.    Any suit by the current directors of Macy's to remedy these wrongs would likely expose the Individual Defendants and Macy's to violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

77.    Macy's has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Macy's any part of the damages Macy's suffered and will suffer thereby.

78.    If Macy's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Macy's. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Macy's against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Macy's, there would be no

- 25 -

directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Macy's to sue them, since they will face a large uninsured liability.

79.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Macy's for any of the wrongdoing alleged by plaintiff herein.

80.     Plaintiff has not made any demand on shareholders of Macy's to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Macy's is a publicly held company with over 459 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against All Defendants for Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above. as though fully set forth herein.

82.     During the Relevant Period, the Individual Defendants disseminated or approved the improper statements alleged above that failed to accurately disclose Macy's true business prospects. Specifically, Macy's Relevant Period statements, among other things, failed to disclose that the Company's sales were declining as a result of the failed integration of the May department stores. The Individual Defendants knew or recklessly disregarded the fact that the Company's Relevant Period statements were misleading in that the financial statements contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the

- 26 -

circumstances under which they were made, not misleading.

83.    The Insider Selling Defendants also sold over 423,000 shares of Macy's common stock at inflated prices during the Relevant Period, receiving over $19 million in proceeds, while in possession of material non-public information.    These defendants misappropriated Macy's proprietary information and violated their "abstain or disclose" duties under the federal securities laws when they sold Macy's stock without disclosing the information alleged to have been concealed herein.

84.    At the same time the price of the Company's common stock was inflated due to the improperly accounted for stock options and the Insider Selling Defendants were selling stock into the market, the Individual Defendants were causing Macy's to repurchase $2 billion worth of its own stock on the open market at inflated prices.

85.    As such, the Individual Defendants violated §10(b) of the Exhange Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon Macy's and others in connection with their purchases of Macy's common stock during the Relevant Period.

86.    As a result of the Individual Defendants' misconduct, Macy's has and will suffer damages in that it paid artificially inflated prices for Macy's common stock purchased on the open market. Macy's would not have purchased Macy's common stock at the prices it paid had the market previously been aware that the market price of Macy's stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, Macy's suffered damages in connection with its purchases of Macy's common stock during the Relevant Period.  By reason of such conduct, the Individual Defendants are liable to the Company pursuant to §10(b) of the Exhange Act and SEC Rule 10b-5 promulgated thereunder.

## COUNT II

**Against All Defendants for Breach of Fiduciary Duty for Improper Financial Reporting**

87.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88.    The Individual Defendants owed and owe Macy's fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Macy's the highest obligation of good fa. h fair dealing, loyalty and due care.

89.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

90.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's publicly reported financial guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

91.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Macy's has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

92.    Plaintiff on behalf of Macy's has no adequate remedy at law.

## COUNT III

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

93.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Macy's common stock on the basis of such information.

95.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset

belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Macy's common stock.

96.      At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Macy's common stock while in possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

97.      Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT IV

### Against All Defendants for Breach of Fiduciary Duty for Abuse of Control

98.      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.      The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Macy's, for which they are legally responsible.

100.     As a direct and proximate result of the Individual Defendants' abuse of control, Macy's has sustained significant damages.

101.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

102.     Plaintiff on behalf of Macy's has no adequate remedy at law.

## COUNT V

### Against All Defendants for Breach of Fiduciary Duty for Gross Mismanagement

103.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Macy's in a manner consistent with the operations of a publicly held corporation.

- 29 -

105.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Macy's has sustained significant damages in excess of hundreds of millions of dollars.

106.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

107.    Plaintiff on behalf of Macy's has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Waste of Corporate Assets

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109.    As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Macy's to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

110.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

111.    Plaintiff on behalf of Macy's has no adequate remedy at law.

## COUNT VII

### Against All Defendants for Unjust Enrichment

112.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113.    By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Macy's.

114.    Plaintiff, as a shareholder and representative of Macy's, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

- 30 -

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B.     Declaring that the Defendants are liable under of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder for directing Macy's to repurchase $2 billion of its stock at artificially inflated prices and awarding Macy's damages;

C.     Directing Macy's to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Macy's and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.     control and limit insider stock selling;

3.     a provision to permit the shareholders of Macy's to nominate at least three candidates for election to the Board;

4.     a proposal to ensure the accuracy of the qualifications of Macy's directors, executives and other employees;

5.     a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters;

6.     a proposal to hire truly independent financial advisors to determine if potential share repurchases are in the Company's best interest; and

7.     appropriately test and then strengthen the internal audit and control functions.

- 31 -

D.      Extraordinary equitable and/or injunctive relief as permitted by law and equity including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Macy's has an effective remedy;

E.      Awarding to Macy's restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

F.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 2○, 2007

LAW OFFICES OF THOMAS G. AMON
THOMAS G. AMON

THOMAS G. AMON

500 Fifth Avenue, Suite 1650
New York, NY 10110
Telephone: (212) 810-2431
Facsimile: (212) 810-2427

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
CAROLINE A. SCHNURER
ASHLEY R. PALMER
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

BARRETT, JOHNSTON & PARSLEY, LLC
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

Attorneys for Plaintiff

- 32 -

## VERIFICATION

I, Earl Seymour, hereby declare as follows:

I am Chairman of the Board of Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli"). Pirelli is a shareholder of Macy's Inc. (formerly known as Federated Department Stores, Inc.) and has been during the relevant times pertinent hereto. I certify under penalty of perjury that I have reviewed the foregoing Verified Shareholder Derivative Complaint, and authorized its filing and, based upon the investigation of my counsel, that the contents in the Complaint are true to the best of my knowledge, information and belief.

Dated: June 19, 2007

EARL SEYMOUR
Chairman of the Board
Pirelli Armstrong Tire Corporation Retiree
Medical Benefits Trust