**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

PIRELLI ARMSTRONG TIRE                )    Case No. 1:07-cv-05862-RJH
CORPORATION RETIREE MEDICAL           )
BENEFITS TRUST, Derivatively on Behalf )    ECF
of MACY'S, INC.,                      )
                                      )
        Plaintiff,                )
                                      )
vs.                                   )
                                      )
TERRY J. LUNDGREN, KAREN M.           )
HOGUET, SARA LEVINSON, CRAIG E.       )
WEATHERUP, JOSEPH NEUBAUER,           )
JOSEPH A. PICHLER, JOYCE M. ROCHE,    )
MEYER FELDBERG, MARNA C.              )
WHITTINGTON, KARL M. VON DER          )
HEYDEN, WILLIAM P. STIRITZ, JOEL A.   )
BELSKY, DENNIS J. BRODERICK,          )
THOMAS G. CODY, THOMAS L. COLE,       )
JANET E. GROVE and SUSAN D.           )
KRONICK,                              )
                                      )
        Defendants,               )
                                      )
- and -                               )
                                      )
MACY'S, INC., a Delaware corporation, )
                                      )
        Nominal Defendant.        )

---------------------------------------------------------- x

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS THE SHAREHOLDER DERIVATIVE COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................... 1

BACKGROUND ......................................................... 2

ARGUMENT ........................................................... 5

I.  The Complaint Should Be Dismissed For Lack of a Pre-Suit Demand ...................... 6

    A.  Plaintiff Fails To Establish That The Directors Are Interested or Lack Independence ..................................................... 7

        1.  Plaintiff's Allegation That the Directors Will Not Sue Themselves Does Not Excuse a Demand ............................ 8

        2.  Plaintiff's Allegation That the Directors "Authorized and/or Permitted" the Alleged Wrongdoing Does Not Excuse a Demand ............................... 10

        3.  Plaintiff's Allegations Regarding the Directors' Duties As Board and Committee Members Do Not Excuse a Demand ................................... 12

        4.  Plaintiff's Insider Trading Allegations Do Not Excuse a Demand ................................... 14

        5.  Plaintiff's Allegations Regarding the Company's Stock Repurchase Do Not Excuse a Demand ............................ 15

        6.  Plaintiff's Allegations Regarding Director Compensation Do Not Excuse a Demand ......................... 16

        7.  Plaintiff's Allegations Regarding Entangling Relationships Among Directors Do Not Excuse a Demand ................................... 17

    B.  Plaintiff Fails to Establish that the Board's Authorization of the Company's Stock Buyback Program Was Not a Valid Exercise of Business Judgment ..................................... 19

II.  The Complaint Fails to State a Claim Upon Which Relief Can Be Granted ..................................................... 21

    A.  The Complaint Fails to Satisfy Rule 9(b) and the PSLRA ............................ 21

# TABLE OF CONTENTS
(Continued)

Page

B.  The Complaint Fails to Overcome the Protections of the Business Judgment Rule ...................................................................24

C.  Plaintiff's Claims for Waste and Unjust Enrichment Should Be Dismissed ........................................................................... 25

CONCLUSION ........................................................................................................... 25

CLI-1561983v3

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ......................................................................... 6, 23

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ................................................................................. 5, 6

*Caiafa v. Sea Containers Ltd.*, No. 06 Civ. 2565(RMB),
  2007 WL 2815633 (S.D.N.Y. Sept. 25, 2007) ......................................... 22, 23

*Conley v. Gibson*,
  355 U.S. 41 (1957) .......................................................................................... 6

*Ferre v. McGrath*, No. 06-Civ-1684(CM),
  2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) .......................................... 10, 13

*Fink v. Komansky*, No. 03-CV-0388(GBD),
  2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ............................................... 6, 8

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ............................................................................. 5

*Halpert Enterprises, Inc. v. Harrison*,
  362 F. Supp. 2d 426 (S.D.N.Y. 2005) ..................................................... 10, 13

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................. 5

*In re Aegon N.V. Sec. Litig.*, No. 03 Civ. 0603(RWS),
  2004 WL 1415973 (S.D.N.Y. June 23, 2004) ............................................... 24

*In re Global Crossing, Ltd. Sec. Litig.*,
  471 F. Supp. 2d 338 (S.D.N.Y. 2006) ............................................................. 2

*In re IAC/InterActiveCorp Sec. Litig.*,
  478 F. Supp. 2d 574 (S.D.N.Y. 2007) ..................................................... 8, 22, 23, 24

*In re Sonus Networks, Inc. Deriv. Litig.*, No. 040753BLS,
  2004 WL 2341395 (Mass. Super. Ct. Sept. 27, 2004) ................................... 13

CLI-1561983v3

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES
(Continued)

*In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041,
　　2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ................................................................ 24

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
　　222 F.R.D. 603 (D. Minn. 2004) ................................................................................... 13

*Jacobs v. Coopers & Lybrand, L.L.P.*, No. 97-CIV-3374 (RPP),
　　1999 WL 101772 (S.D.N.Y. Mar. 1,  1999) ................................................................. 13

*Kalnit v. Eichler*,
　　264 F.3d 131 (2d Cir. 2001) ......................................................................................... 23

*Kamen v. Kemper Fin. Servs., Inc.*,
　　500 U.S. 90 (1991) .......................................................................................................... 1

*Kramer v. Time Warner Inc.*,
　　937 F.2d 767 (2d Cir. 1991) ........................................................................................... 2

*Langner v. Brown*,
　　913 F. Supp. 260 (S.D.N.Y. 1996) .......................................................................... 17, 19

*Lewis v. Graves*,
　　701 F.2d 245 (2d. Cir. 1983) .............................................................................. 8, 10, 11

*Lewis ex rel. Nat'l Semiconductor Corp. v. Sporck*,
　　612 F. Supp. 1316 (N.D. Cal. 1985) ............................................................................ 15

*Shields v. Citytrust Bancorp, Inc.*,
　　25 F.3d 1124 (2d Cir. 1994) ................................................................................... 22, 23

*Shields ex rel. Sundstrand Corp. v. Erickson*,
　　710 F. Supp. 686 (N.D. Ill. 1989) ............................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　127 S. Ct. 2499 (2007) ................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### STATE CASES

*A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*,
No. 19133-NC, 2002 WL 31820970
(Del. Ch. Dec. 4, 2002) ............................................................................................. 17

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ..........................................................6, 7, 8, 19, 20, 21, 25

*Akins v. Cobb*, No. 18266,
2001 WL 1360038 (Del. Ch. Nov. 1, 2001) ................................................................ 21

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ........................................................................ 17, 18, 19

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
891 A.2d 150 (Del. Ch. 2005),
*aff'd*, 906 A.2d 114 (Del. 2006) ...............................................................16, 17

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ........................................................... 8, 11, 12, 25

*Brody v. Zaucha*,
697 A.2d 749 (Del. 1997) ................................................................................. 5

*California Pub. Employees' Ret. Sys. v. Coulter*, No. 19191,
2002 WL 31888343 (Del. Ch. Dec. 18, 2002) .............................................. 11

*Caruana v. Saligman*, No. 11135,
1990 WL 212304 (Del. Ch. Dec. 21, 1990) ................................................... 10

*Cinerama, Inc. v. Technicolor, Inc.*,
663 A.2d 1156 (Del. 1995) ........................................................................ 16

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ............................................................. 9, 10, 11

*Greenwald v. Batterson*, No. 16475,
1999 WL 596276 (Del. Ch. July 26, 1999) ................................................... 20

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003)................................................... 7, 8, 9, 12, 14, 15

# TABLE OF AUTHORITIES

Page(s)

## STATE CASES
### (Continued)

*Highland Legacy Ltd. v. Singer*, No. 1566-N,
    2006 WL 741939 (Del. Ch. March 17, 2006) ................................................................. 21

*In re Caremark Int'l, Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ........................................................................................ 24

*In re J.P. Morgan Chase & Co. Shareholder Litig.*,
    906 A.2d 808 (Del. Ch. 2005),
    *aff'd*, 906 A.2d 766 (Del. 2006) .............................................................................. 18, 20

*In re Oracle Corp. Derivative Litig.*,
    824 A.2d 917 (Del. Ch. 2003) ........................................................................................ 18

*In re Pozen S'holders Litig.*, Nos. 04 CVS 1540, 04 CVS 1542,
    2005 WL 3035783 (N.C. Super. Ct. Nov. 10, 2005) ..................................................... 16

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ........................................................................................ 25

*Lewis v. Frites*, No. 12566,
    1993 WL 47842 (Del. Ch. Feb. 19, 1993) ...................................................................... 11

*Litt v. Wycoff*, No. 19083-NC,
    2003 WL 1794724 (Del. Ch. Mar. 28, 2003) ........................................................... 20, 21

*Official Comm. of Unsecured Creditors of Integrated Health*
    *Services, Inc. v. Elkins*, No. 20228-NC,
    2004 WL 1949290 (Del. Ch. Aug. 24, 2004) .................................................................. 9

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) ...................................................................................... 11, 18

*Prince v. Bensinger*,
    244 A.2d 89 (Del. Ch. 1968) .......................................................................................... 12

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ....................................................................... 7, 8, 9, 17, 20

CLI-1561983v3

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## STATE CASES
(Continued)

*Rattner v. Bidzos*, No. 19700,
2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ........................................... 10, 11, 12, 14, 15

*Richardson v. Graves*, No. 6617,
1983 WL 21109 (Del. Ch. June 17, 1983) ...................................................................... 10

*Seminaris v. Landa*,
662 A.2d 1350 (Del. Ch. 1995) ................................................................................. 9, 11

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ...................................................................................... 6, 9, 24

*White v. Panic*,
783 A.2d 543 (Del. 2001) ...................................................................................... 6, 7, 20

## STATUTES and RULES

15 U.S.C. § 78u-5 ................................................................................................................ 22

Fed. R. Civ. P. 9 ...................................................................................... 2, 6, 21, 22, 23

Fed. R. Civ. P. 12 ......................................................................................................... 2, 5

Fed. R. Civ. P. 23.1 ........................................................................................................... 1

Del. Code tit. 8, § 102 ......................................................................................................... 9

Del. Code tit. 8, § 141 ....................................................................................................... 12

## MISCELLANEOUS

Missy Piccioni, Note, *A Regulatory Response By the Securities and
Exchange Commission to the Terrorist Attacks on America
– Did the Issuer Repurchase Relief Make a Difference?*,
34 Rutgers L.J. 565 (2003) ............................................................................................. 21

CLI-1561983v3

## PRELIMINARY STATEMENT

This shareholder derivative action, which plaintiff purports to bring on behalf of nominal defendant Macy's, Inc. ("Macy's" or the "Company"), should be dismissed for failure to comply with the condition precedent to any such suit: making a pre-suit demand on the board of directors. Under Delaware law, it is only in rare cases that an individual shareholder can arrogate to itself – and take away from the board of directors – the right to decide whether to bring suit on behalf of the corporation.[1] A plaintiff may do so only when it is able to make particularized allegations that give rise to a substantial likelihood that the directors will be found liable.

This Complaint does not come close to meeting that standard. Commenced just after the Company announced that it had not met its first quarter 2007 sales projections, plaintiff has done little more than exploit the Company's announcement to craft boilerplate, hindsight-based allegations that the directors "authorized and/or permitted" financial projections to be issued that turned out months later to be inaccurate. But no individual director is alleged to have had any particularized item of information showing that Macy's financial projections were known to be inaccurate when issued. Plaintiff simply makes the conclusory allegation that Macy's projections were "false" (in the sense that the actual results did not meet the projections) and that the directors – by virtue of their position as directors – "must have known" that the projections could not be achieved. In the absence of any particularized allegations showing what the directors knew, and how, and when, the Complaint fails to show *any* likelihood that the directors will be found liable, much less a "substantial" one. Moreover, plaintiff has been unable to specify any other reason for disqualifying the directors from deciding whether this suit should proceed.

In addition to the fatal and unexcused lack of a pre-suit demand, the Complaint also fails

---

[1] The adequacy of the demand required by Rule 23.1 is determined under the law of the corporation's state of incorporation, which in this case is Delaware. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 109 n.10 (1991).

to state an actionable claim. Plaintiff fails to plead its fraud-based claims with the particularity required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). And the Complaint does not overcome the protection of the business judgment rule or satisfy the elements of claims for waste or unjust enrichment. Accordingly, the Complaint should be dismissed.

## BACKGROUND

Macy's is a Delaware corporation headquartered in New York City and Cincinnati. (¶ 21.)[2] Macy's is the second-largest department store franchise in the United States with more than 850 department stores in 45 states, operating stores under the names "Macy's" and "Bloomingdale's." (¶ 2.) The defendants in this derivative action include current and former directors and officers of Macy's, and nominal defendant Macy's. (¶¶ 21-38.)

At the time plaintiff first filed this derivative action on June 20, 2007, Macy's board of directors had ten members. (¶¶ 22, 24-31, 100.)[3] Of the ten, only one – defendant Terry J. Lundgren – was an employee of Macy's. (¶ 22.) The other nine were non-employee, independent directors. The Complaint names eight of those outside directors as defendants: Sara Levinson, Craig E. Weatherup, Joseph Neubauer, Joseph A. Pichler, Joyce M. Roche, Meyer Feldberg, Marna C. Whittington, and Karl M. von der Heyden. (¶¶ 24-31.) A ninth outside director, Stephen F. Bollenbach, is not named as a defendant. (*See supra* note 3.) The Company's nine outside directors are some of the most distinguished business leaders in the

---

[2] All paragraph references are to the Complaint (ECF 30). Documents referred to in the Complaint or otherwise properly considered on a motion to dismiss are being filed separately as exhibits to the Declaration of Michael A. Platt in support of this motion ("Platt Decl. Ex. __").

[3] The Complaint alleges that the tenth director, Stephen F. Bollenbach, joined the board after this action was originally filed. (¶ 100, n.2.) That is incorrect. Mr. Bollenbach was elected to the Macy's board on June 13, 2007 – seven days before plaintiff first filed this action. (*See* 6/13/07 8-K, Platt Decl. Ex. A.) On a motion to dismiss pursuant to Rule 12(b)(6), the Court may take judicial notice of matters of public record, including the contents of documents required to be filed with the Securities and Exchange Commission (the "SEC"). *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 343 (S.D.N.Y. 2006).

-2-

United States.  (*See* 6/13/07 8-K, Platt Decl. Ex. A; 4/4/07 Proxy Statement at 7-9, Platt Decl. Ex. B (setting forth the background of each director).)

Plaintiff's claims center on allegations that, in February 2007, Macy's issued sales forecasts for its first fiscal quarter of 2007 that later proved to be inaccurate, and that those inaccurate forecasts caused "artificial inflation" in the Company's share price until the actual first-quarter sales results were announced in mid-May.  (¶¶ 8-13, 85-86.)  According to the Complaint, after Macy's (then known as Federated Department Stores, Inc.) acquired the May Department Stores Company ("May") in August 2005, the Individual Defendants "caused or allowed the Company to issue press releases and file documents with the [SEC], touting the Merger's success, which artificially inflated the Company's stock."  (¶ 5.)  In particular, the Complaint alleges that Macy's made public announcements in 2005 and 2006 stating that the Company "expected" the merger to improve its earnings and same-store sales figures.[4]  The Complaint alleges that these statements were improper because they purportedly did not disclose that sales at former May stores were lagging.  (¶¶ 68-76.)[5]

According to the Complaint, Macy's announced on February 8, 2007 "preliminary fourth quarter [2006] results that significantly exceeded analyst and investor expectations" (¶ 8), stating

---

[4]  *See* ¶ 69 ("'The Company expects that the Merger will be accretive to its earnings per share in 2007.'") (quoting 9/8/05 10-Q); ¶ 70 ("'The Merger is expected to have a material effect on the Company's consolidated financial position, results of operations and cash flows.'") (quoting 12/8/05 10-Q); ¶ 71 ("'With the acquisition of May, . . . sales, number or stores and number of associates have grown and likely will continue to grow.'") (quoting 4/13/06 10-K); ¶ 72 ("'The Merger is also expected to accelerate comparable store sales growth.'") (quoting 6/6/06 10-K/A); ¶ 73 ("'The Merger has had and is expected to continue to have a material effect on the Company's consolidated financial position, results of operations and cash flows.'") (quoting 9/7/06 10-Q).

[5]  The Complaint does not, however, mention other public statements by the Company during 2006 that expressly cautioned investors about the performance of former May stores.  For example, the Company's Form 8-K of August 9, 2006 stated that Macy's was "still in the process of transitioning the former May Company locations with significant merchandise assortment change-outs, clearance sales of discontinued inventory and remodeling activity which is disruptive to the business, and *our sales performance in these stores continues to lag*."  (8/9/06 8-K, Platt Decl. Ex. C (emphasis added); *see also* 11/2/06 8-K, Platt Decl. Ex. D ("Sales in October remained strong in legacy Macy's and Bloomingdale's stores, while *former May Company locations continued to lag*.") (emphasis added).)

that "'January represented a strong finish to our fiscal year, with an outstanding performance in legacy Macy's and Bloomingdale's stores, as well as continued improvement in sales trends at former May Company locations.'" (¶ 74 (quoting 2/8/07 8-K, Platt Decl. Ex. E).)  (Macy's 2006 fiscal year ended on February 3, 2007.)  Several weeks later, on February 27, 2007, Macy's announced its financial projections for the first fiscal quarter of 2007.  It projected increased same-store sales of 2.5% to 3.5%, total sales of $6 billion to $6.1 billion, and earnings of 15 to 20 cents per diluted share.  (¶ 86 (citing 2/27/07 8-K, Platt Decl. Ex. F).)  Macy's thereafter missed by small amounts its projected same-store sales figures for February and March 2007.  (¶¶ 81-82.)[6]

On May 10, 2007, as a result of sales that "'were disappointing across the country in both new and legacy Macy's stores,'" Macy's announced a decrease of 2.2% in same-store sales for April, compared to projections of a 2.5% to 4% increase.  (¶ 84 (quoting 5/10/07 8-K, Platt Decl. Ex. I).)  On May 16, 2007, the Company announced that, due to "'sales in the new Macy's locations [*i.e.*, the former May stores] [that] were disappointing in the quarter,'" its financial performance for the first quarter of 2007 was below its previous expectations.  (¶ 85 (quoting 5/16/07 8-K, Platt Decl. Ex. J).)  Specifically, same-store sales for the full quarter had increased 0.6%, compared to a projected increase of 2.5% to 3.5%, and total sales revenue was $5.921 billion, compared to a projected $6 billion to $6.1 billion.  (¶ 86.)  The Company, however, met its first quarter 2007 projection for earnings per diluted share – 16 cents, compared to a projection of 15 cents to 20 cents.  (5/16/07 8-K, Platt Decl. Ex. J.)  This announcement allegedly caused a 38% decline in the Company's stock price.  (¶ 87.)

On June 20, 2007, plaintiff commenced this derivative action, asserting claims under

---

[6] The Company's same-store sales for February 2007 increased by 1.2%, compared to a projected increase of 2% to 3%.  (¶ 81 (citing 3/8/07 Press Release, Platt Decl. Ex. G).)  The Company's same-store sales for March 2007 increased by 2.3%, compared to a projected increase of 2.5% to 4%.  (¶ 83 (citing 4/12/07 Press Release, Platt Decl. Ex. H).)

§ 10(b) of the Securities Exchange Act of 1934 (¶¶ 118-23), various breaches of fiduciary duties (¶¶ 124-44), waste of corporate assets (¶¶ 145-48), and unjust enrichment (¶¶ 149-51). According to plaintiff, the Individual Defendants knew or should have known that, due to weak performance of the May stores, the Company's financial projections for the first fiscal quarter of 2007 were "knowingly unattainable." (¶ 76.) Plaintiff also alleges that, around the time Macy's made these purportedly intentionally inaccurate projections, three of its current ten directors and several of its officers sold Macy's stock that they owned personally. (¶¶ 12, 96, 101.) Also at that time, the Company's board allegedly authorized Macy's to repurchase Macy's stock pursuant to the Company's stock buyback program, which resulted in the Company repurchasing approximately $2 billion of stock at an allegedly inflated price. (¶¶ 12, 79, 105.)[7] Plaintiff did not make a demand upon the board before filing this action. (¶ 100.)

## ARGUMENT

"Under Rule 12(b)(6), the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal quotations omitted); *see also Brody v. Zaucha*, 697 A.2d 749, 754 n.6 (Del. 1997) (courts are not required to accept plaintiff's "spin on the facts"). The Court also need not credit averments "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 477 n.40 (S.D.N.Y. 2005) (internal quotations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

---

[7] The Complaint also makes one peculiar reference to "improperly accounted for stock options." (¶ 121.) This action does not, of course, challenge Macy's accounting of stock option grants. It does not take a detective to conclude, based on this mistake, that plaintiff has "borrowed" this Complaint – and its boilerplate allegations – from others.

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal quotations omitted).  A plaintiff must meet a pleading standard of "plausibility," as opposed to simple possibility, in order to pursue its claims.  *See id.* at 1965; *accord ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) (applying *Twombly* to securities fraud action).[8]

The Complaint falls far short of this test, and is subject to dismissal for (1) failing to demonstrate that a pre-suit demand was excused; (2) failing to satisfy the pleading requirements of the PSLRA and Rule 9(b); (3) failing to overcome the protections of the business judgment rule; and (4) failing to state a claim for waste or unjust enrichment.

## I.    The Complaint Should Be Dismissed For Lack of a Pre-Suit Demand.

Under Delaware law, "the board of directors has sole authority to initiate or to refrain from initiating legal actions asserting rights held by the corporation."  *White v. Panic*, 783 A.2d 543, 550 (Del. 2001).  This is because "[t]he decision to bring a lawsuit is a business one and a corporation's board of directors has the primary responsibility of conducting the business affairs of the corporation."  *Fink v. Komansky*, No. 03-CV-0388(GBD), 2004 WL 2813166, at *2 (S.D.N.Y. Dec. 8, 2004) (Delaware law).  A shareholder believing that the corporation should pursue a lawsuit therefore must make a demand on the board to have the corporation itself bring the suit, and thereby leave the decision in the hands of the board.  *See, e.g.*, *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984).  This strict limitation on shareholder derivative suits is subject to only a single "limited exception."  *White*, 783 A.2d at 550.  A shareholder can proceed without making demand – and thereby "'impinge[] on the managerial freedom of directors,'" *Stone v. Ritter*, 911 A.2d 362, 366-67 (Del. 2006) – only if the complaint alleges with particularity that "a

---

[8] *Twombly* discarded the longstanding rule of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which permitted a lawsuit to proceed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The *Twombly* court held that "this famous observation has earned its retirement."  127 S. Ct. at 1969.  In light of the burdens imposed upon defendants in discovery in complex cases, *Twombly* requires the Court to scrutinize the Complaint more critically at the motion to dismiss stage.

demand would be a futile gesture and is therefore excused." *White*, 783 A.2d at 550. Delaware law contains two different formulations of the test for determining when a demand is excused.

Where the complaint does not challenge "any particular business decision made by the . . . board as a whole," *Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003), a demand is excused if the complaint's "particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). This test applies to plaintiff's allegations that the board failed to prevent Macy's from making inaccurate financial projections, as well as plaintiff's insider trading allegations. *See Guttman*, 823 A.2d at 499-502 (*Rales* test applies to failure-to-supervise and insider trading claims). Where, however, the complaint challenges a decision of the board – *i.e.*, the Macy's board's decision to authorize the Company's stock buyback program – "a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) 'the directors are disinterested and independent' or '(2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *White*, 783 A.2d at 551 (quoting *Aronson*, 473 A.2d at 814).

Although the "*Rales* test" and the "*Aronson* test" are formulated differently, the essential inquiry is the same under both: whether plaintiff's allegations establish that the directors face a "substantial likelihood" of liability. *See Guttman*, 823 A.2d at 500-501 (describing the convergence of the two tests). Plaintiff's boilerplate allegations do not even begin to satisfy this requirement.

### A.     Plaintiff Fails To Establish That The Directors Are Interested or Lack Independence.

Plaintiff's burden of establishing that the directors are "interested" or lack "independence"

– the essential requirement of the *Rales* test and the first prong of the *Aronson* test – is a heavy

one. "Directors are entitled to a presumption that they were faithful to their fiduciary duties, thus

the burden is upon the plaintiff to allege particularized facts to rebut the presumption at the

pleading stage." *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 598 (S.D.N.Y. 2007)

(Delaware law) (Holwell, J.). The Complaint "must sufficiently detail defendants' involvement."

*Fink*, 2004 WL 2813166, at *6 (citing *Lewis v. Graves*, 701 F.2d 245, 250 (2d Cir. 1983)).

Plaintiffs can raise the requisite doubt about directors' impartiality only by allegations meeting

"stringent requirements of factual particularity," *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000),

and the Court "cannot accept cursory contentions of wrongdoing." *Guttman*, 823 A.2d at 499.

The relevant date for determining whether demand is excused in this case is June 20, 2007

– the date plaintiff commenced this action. *See Rales*, 634 A.2d at 934. As of that date, Macy's

had ten directors: Lundgren, Levinson, Weatherup, Neubauer, Pichler, Roche, Feldberg,

Whittington, von der Heyden, and Bollenbach. (¶¶ 22, 24-31; *supra* note 3 (noting that

Bollenbach was a Macy's director at the time plaintiff commenced this action).) Thus, plaintiff

has the burden of establishing, through particularized allegations, that at least five of these

directors were so interested, or lacking in independence, as to disqualify them from considering a

demand. *See IAC/InterActiveCorp*, 478 F. Supp. 2d at 599.

While plaintiff sets forth a laundry list of boilerplate allegations of futility, each has been

consistently rejected by this Court and others applying Delaware law. Taken together or

separately, these "excuses" fall far short of creating a reasonable doubt that at least half of the

Company's board was disinterested and independent.

       **1.**       **Plaintiff's Allegation That the Directors Will Not Sue Themselves Does Not Excuse a Demand.**

Plaintiff alleges that demand is futile because "all of the directors of Macy's would be

forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do." (¶ 110.) But the allegation that "you can't expect directors to sue themselves" is a "discredited refrain." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). "[T]he mere threat of personal liability . . . standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Rales*, 634 A.2d at 936 (internal quotations omitted). Rather, there must be "a 'substantial likelihood' of personal liability" to find that a director's "ability to consider a demand impartially is compromised." *Guttman*, 823 A.2d at 501 (citing *Rales*, 634 A.2d at 936).

Moreover, the requisite "substantial likelihood" of liability cannot be established by evidence that the directors were merely negligent, or even grossly negligent. Macy's Certificate of Incorporation contains an "exculpatory provision," authorized by Del. Code tit. 8, § 102(b)(7), which effectively immunizes its directors from liability for any breach of the duty of care. *See Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. 20228-NC, 2004 WL 1949290, at *9 n.37 (Del. Ch. Aug. 24, 2004) ("actions taken that are even grossly negligent, so long as not falling within one of the exceptions contained in § 102(b)(7), will be shielded by a § 102(b)(7) provision"); *see also* Second Restated Certificate of Incorporation of Macy's, Inc., Article Ninth, Platt Decl. Ex. K. As the Delaware Supreme Court recently re-affirmed, a § 102(b)(7) exculpatory provision is fully applicable on a motion to dismiss for failure to make a demand. *See Stone*, 911 A.2d at 367 ("[c]ritical to this demand excused argument is the fact that the directors' potential personal liability depends upon whether or not their conduct can be exculpated by the section 102(b)(7) provision"). Accordingly, "in light of [the company's] exculpatory charter provision, a scienter-based standard for liability applies in determining whether any director faces a threat of personal liability." *Desimone v. Barrows*, 924 A.2d 908,

-9-

945 (Del. Ch. 2007).[9]  Here, the Complaint falls woefully short of meeting that standard for *any* of the directors, as detailed below.

### 2. Plaintiff's Allegation That the Directors "Authorized and/or Permitted" the Alleged Wrongdoing Does Not Excuse a Demand.

Plaintiff's principal excuse for not making a demand is that the defendants allegedly "participated in, approved and/or permitted the wrongs alleged herein" (¶ 109), and either "caused or allowed" (¶¶ 5, 68-75, 80-83) or "authorized and/or permitted" (¶ 112) "the Company to issue press releases and file documents with the [SEC]" (¶ 5) that allegedly contained "false statements disseminated directly to the public or made directly to securities analysts" (¶ 112), which "triggered an artificial inflation of the Company's share price."  (¶ 12.)  Defendants also allegedly "authorized the buyback of over $2 billion of the Company's shares" while knowing that the stock price was artificially inflated.  (¶ 105.)

But plaintiff makes *no* reference to the role or knowledge of any individual director, instead referring repeatedly, and without elaboration, to what "the defendants" or "Individual Defendants" allegedly did (*e.g.*, ¶¶ 5, 6, 9, 47-54, 69-75, 80-83) and what they allegedly knew (*e.g.*, ¶¶ 43, 60, 67, 76, 101).  This pleading tactic, lumping directors together and failing to differentiate between them, cannot give rise to a substantial likelihood of liability on the part of *any* individual director.  *See Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003) (rejecting as "conclusory" allegations treating individual defendants as a group

---

[9] Plaintiff similarly alleges that the fact that the directors "have not filed any lawsuits against themselves or others" is evidence that the directors are interested.  (¶ 114.)  But this assumes without any basis that a lawsuit *should* have been filed.  The courts recognize that "[t]he mere fact that [the board] ha[s] not elected to sue before the derivative action was filed should not of itself indicate 'interestedness.'"  *Richardson v. Graves*, No. 6617, 1983 WL 21109, at *3 (Del. Ch. June 17, 1983); *see also Lewis v. Graves*, 701 F.2d at 249 ("bald charges of mere failure to take corrective action are similarly inadequate to demonstrate futility").  The courts have also rejected the closely related argument (advanced here in ¶ 115 of the Complaint) that directors will not sue themselves because D & O insurance policies contain an "insured versus insured exclusion."  *See Ferre v. McGrath*, No. 06-Civ-1684(CM), 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007) (noting that "this argument has been rejected repeatedly under Delaware law") (citing *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) and *Caruana v. Saligman*, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990)).

-10-

for pleading purposes). This rule has special force here, given that the Complaint itself defines "defendants" and "Individual Defendants" as including both the "Director Defendants" and the "Officer Defendants." (¶ 39.) "To establish that a *board* was interested or lacked independence, a plaintiff must allege facts as to the interest and lack of independence of the *individual members* of that board." *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002); *see also Desimone*, 924 A.2d at 943 ("a derivative complaint must plead facts *specific to each director*"). This plaintiff fails to do.

Moreover, the bare allegations that defendants "caused" (¶¶ 5-6, 51, 68-75, 80-83, 94), "allowed" (¶¶ 5, 68-75, 80-83), "permitted" (¶¶ 109, 112), or "participated in" (¶ 109) alleged wrongdoing, are patently deficient.[10] Because derivative claims are "almost invariably directed at major, allegedly illegal, corporate transactions" in which the directors were ordinarily involved, "[e]xcusing demand on the mere basis of prior board acquiescence . . . would obviate the need for demand in practically every case." *Lewis v. Graves*, 701 F.2d at 248.

Absent particularized allegations of director knowledge, plaintiff's boilerplate assertions that defendants "caused or allowed the Company to issue press releases and file documents with the [SEC]" (¶ 5) that allegedly contained false and misleading statements (¶¶ 69-76, 80-83) similarly fail to demonstrate that demand is futile. *See, e.g.*, *Rattner*, 2003 WL 22284323, at *12-13 (demand not excused where plaintiff failed to plead particularized facts showing that directors knew of the alleged falsity of financial reports or the directors' role in preparing or disseminating the reports); *Seminaris*, 662 A.2d at 1354 (allegation that directors signed a misleading 10-K and

---

[10] *See Brehm*, 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because . . . the directors . . . approved the underlying transaction."); *Lewis v. Fites*, No. 12566, 1993 WL 47842, at *3 (Del. Ch. Feb. 19, 1993) (allegations that directors "participated in and approved the alleged wrongs" have been "rejected repeatedly" as an excuse for failure to make demand); *California Pub. Employees' Ret. Sys. v. Coulter*, No. 19191, 2002 WL 31888343, at *8 (Del. Ch. Dec. 18, 2002) ("Mere approval of, or acquiescence in, a challenged decision of the board, without more, is insufficient to raise a reasonable doubt as to a director's independence or disinterest.").

-11-

other filings did not demonstrate a substantial likelihood of liability).[11]

###    3.    Plaintiff's Allegations Regarding the Directors' Duties As Board and Committee Members Do Not Excuse a Demand.

The closest the Complaint comes to providing particularized allegations regarding the role of any of the directors concerns the Audit Committee.  Plaintiff alleges that Neubauer, Roche, Whittington, and von der Heyden were members of the board's Audit Committee, which was responsible for reviewing and discussing "the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies."  (¶ 104.)  According to the Complaint, these directors therefore "participated in the preparation of improper statements and earnings press releases that contained false and/or misleading material information."  (*Id.*)  This allegation, however, amounts to nothing more than boilerplate about the role of the Audit Committee.  It contains no particularized information about any report or data the committee saw, or any specific information the committee was given, showing that the Audit Committee knew the Company's financial projections were flawed at the time they were issued, and nonetheless approved their issuance.

This is fatal to plaintiff's claim, because it is insufficient to "charge[] directors, solely upon the basis of their status as directors, with knowledge of alleged corporate activity."  *Rattner*, 2003 WL 22284323, at *10 n.53; *see also Guttman*, 823 A.2d at 503 (plaintiff must plead particularized facts showing "why [the directors] would have perceived the accounting irregularities").  "[J]ust because a defendant is a director and member of the company's audit committee does not lead automatically to an inference that the person acted with conscious

_____

[11] Given the fact that many of the alleged falsehoods here are based on allegedly erroneous financial projections, plaintiff's allegations are not even sufficient to establish negligence on the part of the directors, let alone reckless or intentional acts.  The law in Delaware is clear that directors are "fully protected" in relying on an expert such as an accountant.  *See Brehm*, 746 A.2d at 261-62; *Prince v. Bensinger*, 244 A.2d 89, 94 (Del. Ch. 1968) (rejecting claim that directors "knowingly overstated corporate earnings" where directors relied on "reports prepared by [company's] accounting department as well as on the advice of . . . Arthur Andersen & Co."); *see also* Del. Code tit. 8, § 141(e).

-12-

disregard of a known risk as opposed to with gross negligence or even negligence." *Jacobs v. Coopers & Lybrand, L.L.P.*, No. 97-CIV-3374 (RPP), 1999 WL 101772, at *16 (S.D.N.Y. Mar. 1, 1999); *see also Halpert Enters.*, 362 F. Supp. 2d at 429, 432 (allegations that directors "should have been aware of the [unlawful] scheme by virtue of their positions on [the audit committee]" did "not raise a reasonable doubt as to the Board's independence and disinterestedness").

Nor is it sufficient for plaintiff to broadly assert that Audit Committee members "reviewed and failed to correct" (¶ 104) allegedly improper public statements. *See, e.g.*, *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 222 F.R.D. 603, 607 (D. Minn. 2004) (following Delaware law and holding that generalized allegations that audit committee members breached their duty to "monitor the corporation's activities and to investigate the facts underlying its public statements" did "not constitute facts pleaded with particularity" for purposes of establishing demand futility); *In re Sonus Networks, Inc. Deriv. Litig.*, No. 040753BLS, 2004 WL 2341395, at *4 (Mass. Super. Ct. Sept. 27, 2004) (under Delaware law, "generalized allegations reflecting poor supervision over financial statements" by audit committee did not excuse demand).

More generally, the Complaint alleges that all the directors, "[b]ecause of their positions," "knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known" that the May integration was allegedly failing and would result in lower sales. (¶¶ 40, 61.) The Complaint likewise alleges that Roche (and former director William Stiritz), as former directors of May, "knew details about May's business condition prior to the Merger, including its historical decline in sales dating back to 2003." (¶ 62.) Plaintiff does not, however, allege how such knowledge played into the specifics of Macy's financial projections that are at issue here. Again, boilerplate allegations that directors had knowledge of alleged corporate misconduct by virtue of their positions as directors have been rejected repeatedly by this Court. *See, e.g.*, *Ferre v. McGrath*, 2007 WL 1180650, at *6 (S.D.N.Y. Feb. 16, 2007)

-13-

("Allegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law.").

### 4.    Plaintiff's Insider Trading Allegations Do Not Excuse a Demand.

Only three directors are alleged to have sold stock during the relevant period:  Lundgren, Levinson, and Weatherup.  (¶¶ 22, 24, 25.)  Thus, at the outset, plaintiff has failed to show that at least half of the directors are interested with respect to this claim.  *See Rattner*, 2003 WL 22284323, at *8.

Moreover, the Complaint's allegations fail to establish that even Lundgren, Levinson, and Weatherup are interested.  A director is not "'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information."  *Guttman*, 823 A.2d at 502.  Plaintiff must allege facts sufficient to show that each stock sale was made "'on the basis of, and because of, adverse material non-public information.'"  *Id.* at 505; *see also Rattner*, 2003 WL 22284323, at *10-11 & n.60.  The Complaint does no such thing.  Rather, it posits without any particularized facts that, "[b]ecause of their positions," the directors were in possession of "adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof, as well as reports and other information provided to them in connection therewith."  (¶ 40; *see also* ¶¶ 43, 60, 61, 96, 101.)  In *Rattner*, the Delaware Chancery Court rejected virtually identical allegations as conclusory because they "fail to allege with particularity *what information the directors knew and how they acquired such knowledge*."  2003 WL 22284323, at *10 n.53 (emphasis added).  As discussed above, it is not sufficient to charge directors with knowledge of inside information "solely upon the basis of their status as directors."  *Id.*

-14-

The Complaint's insider trading allegations are also fatally flawed in several other respects.  While the Complaint sets forth the dates of the alleged inside trades (¶ 96) – all occurring at a time the directors allegedly "knew that the Company's revenues were materially overstated" (¶ 133)[12] – it "contains no particularized facts regarding the timing of the Director Defendants' trades *in relation to permitted trading periods*."  *Rattner*, 2003 WL 22284323, at *10 (emphasis added).  Thus, "no particularized allegation of the Amended Complaint answers whether th[e] temporal proximity [of defendants' trades] was in fact part of the Company's practice to prevent Company insiders from improperly benefiting from informational asymmetries."  *Id.*; *see also Guttman*, 823 A.2d at 503-04.  Likewise, the Complaint fails to allege whether, and how, the timing of the challenged trades was consistent or inconsistent with the directors' trading activity in prior years.  *See Rattner*, 2003 WL 22284323, at *10.  Absent such particularized facts, the Complaint simply does not lead to an inference of impermissible insider trading.  *Id.*[13]

### 5. Plaintiff's Allegations Regarding the Company's Stock Repurchase Do Not Excuse a Demand.

The Complaint alleges that the board's authorization of the "buyback of over $2 billion of the Company's shares at artificially inflated prices" constituted "self-dealing in that [the directors] sold their personally held shares while directing the Company to buyback [sic] shares." (¶ 105.)  But individuals typically sell stock for multiple reasons that are particular to their own

---

[12] Revealingly, the Complaint contains no substantive allegations of "revenue overstatement" or any other kind of accounting misstatement – another signal that this Complaint is in many respects an ill-executed cut-and-paste job.

[13] Also without merit is plaintiffs' contention that demand is excused because the alleged wrongdoing is incapable of ratification.  (¶ 111.)  This contention "misses the point of the demand requirement," because "[r]atification is not the only option; the board must be given a fair opportunity to decide whether the corporation itself should bring the suit."  *Lewis ex rel. Nat'l Semiconductor Corp. v. Sporck*, 612 F. Supp. 1316, 1323 (N.D. Cal. 1985); *see also Shields ex rel. Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, 692 (N.D. Ill. 1989) (requiring demand notwithstanding "allegations that the acts complained of are crimes and therefore incapable of ratification").  Even then, an ultimate decision not to sue could include consideration of many factors in addition to the cited conduct itself, thus undermining any suggestion that it necessarily amounted to ratification.

circumstances and are unrelated to the reasons a buyer might be purchasing such stock.  In any event, nowhere does the Complaint allege that any director's Macy's stock actually was repurchased pursuant to the buyback program.  As Macy's Form 8-K announcing the stock buyback explained, the buyback "authorization can be used by the company to repurchase shares from time to time in the open market or in other negotiated transactions."  (2/27/07 8-K, Platt Decl. Ex. L.)  Because no director – including the three that are alleged to have sold personal Macy's stock – is alleged to have been on the other side of a repurchase by Macy's, the Complaint fails to allege self-dealing.  *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1995) ("Traditionally, the term self-dealing describes the situation when a [corporate fiduciary] is on both sides of a transaction.") (internal quotations omitted).

> **6.     Plaintiff's Allegations Regarding Director Compensation Do Not Excuse a Demand.**

Plaintiff alleges that "[b]ecause the members of [Macy's] Compensation and Management Development Committee singularly control the other defendants' awards," the Macy's board, as a whole, will not sue the members of those committees, as "[t]o do so would jeopardize each defendant's personal financial compensation."  (¶ 107.)  This type of boilerplate has been rejected repeatedly in Delaware law:  "mere[] alleg[ations] that members of the Compensation Committee have the power to decide whether certain directors continue to be compensated and that as a consequence the other directors would be motivated to act in compliance with their desires" are insufficient to excuse a demand.  *In re Pozen S'holders Litig.*, Nos. 04 CVS 1540, 04 CVS 1542, 2005 WL 3035783, at *14 (N.C. Super. Ct. Nov. 10, 2005) ("[t]he blanket assertion that [the directors] are so interested in maintaining their compensation packages that they are beholden to the members of the Compensation Committee is too conclusory to establish that demand would have been futile here") (Delaware law); *cf. Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d

-16-

150, 177 (Del. Ch. 2005) (determining after trial that because there was no evidence that chairman of the compensation committee "ever threatened to use his power as chairman of the committee to affect the officers' compensation adversely," the officer/directors were independent for purposes of approving the challenged transaction), *aff'd*, 906 A.2d 114 (Del. 2006).

Furthermore, plaintiff's allegations regarding the compensation received by Macy's directors – namely, "unexerciseable stock options" (¶ 102) – are equally unavailing. This allegation, as a matter of law, does not constitute a disabling financial interest. *See A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, No. 19133-NC, 2002 WL 31820970, at \*5 (Del. Ch. Dec. 4, 2002) ("ordinary director compensation alone is not enough to show demand futility"); *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) ("It is well-settled that the receipt of directors' fees does not constitute a disqualifying interest for the purposes of the demand requirement."). If it were otherwise, the demand futility exception would swallow the rule – demand would always be excused.

**7.    Plaintiff's Allegations Regarding Entangling Relationships Among Directors Do Not Excuse a Demand.**

In order to establish that a director lacks independence, "the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (quoting *Rales*, 634 A.2d at 936). The Complaint fails to create such a reasonable doubt, for multiple reasons. First, as established above, none of the directors is interested, and the Complaint certainly does not allege that any director is "beholden" to any other. Accordingly, there is no director from whom the other directors must be independent.

Second, none of the various alleged entanglements among the directors is sufficient to create a reasonable doubt as to any director's independence. Plaintiff principally relies on

allegations that Lundgren and Weatherup are current or former trustees of Carnegie Hall and that von der Heyden, Neubauer, and Feldberg directly or indirectly made donations to Carnegie Hall. (¶ 103(a).)  But nowhere does the Complaint allege how these philanthropic relationships "could, or did, affect the decision-making process" of the directors involved, and "fail[s] to connect [any] contributions to the potential lack of independence of" any director.  *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 822 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006). Accordingly, they do not raise a substantial question about the directors' independence.  *Id.* at 822-23.[14]

The Complaint's allegations that the directors are "friends" (¶ 103), or had various other business contacts (¶ 103(b)-(d), (f), (h)-(j)), also fail to raise any doubt about their independence. It is settled that "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam*, 845 A.2d at 1050; *see also Orman*, 794 A.2d at 27.  To be significant, "for presuit demand purposes, friendship must be accompanied by substantially more in the nature of serious allegations."  *Beam*, 845 A.2d at 1052.  Indeed, "a plaintiff must plead facts that would support the inference that because of the nature of a relationship . . . the non-interested director would be

---

[14] Plaintiff appears to be attempting to analogize the directors' position here to that of two Stanford University professors who formed a special litigation committee ("SLC") to investigate charges of insider trading by four directors of Oracle Corporation, three of whom, including Lawrence Ellison, Oracle's CEO, had very close ties to Stanford.  *See In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003). The SLC's motion to terminate the litigation was denied because the SLC failed to establish that it was independent.  *Id.* at 920.  But as the Delaware Supreme Court noted in *Beam*, that determination is not precedential for independence issues arising outside of the SLC context because an "SLC is a unique creature" requiring "a shift in the burden of persuasion" on various issues, including independence, and that the distinction may be "outcome-determinative on the issue of independence."  845 A.2d at 1055.

Not only are the contexts in which the Macy's board and the Oracle SLC functioned very different, but so are the alleged ties.  The "ties to Stanford" among the SLC and the defendants included the fact that "Oracle's CEO . . . made millions of dollars in donations to Stanford, [and] . . . was considering making donations of his $100 million house and $170 million for a scholarship program."  *Oracle*, 824 A.2d at 920-21.  That past and prospective munificence as well as other factors noted by the court generated considerably greater pressures on the Stanford professors (who were employees of the recipient of the munificence) than any that might conceivably have been felt by the Macy's directors that are alleged to share similar interests in Carnegie Hall.

-18-

more willing to risk his or her reputation than risk the relationship with the interested director."
*Id.*  Plaintiff's allegations do not even approach that standard.

The Complaint's other alleged entanglements also are patently deficient.  The only such allegation involving Roche is that she once sat on May's board of directors with defendant Stiritz (who also is a former Macy's director).  (¶¶ 28, 103(g).)  That lone assertion is not enough, as a matter of law, to sterilize Roche's independence.  *Langner*, 913 F. Supp. at 266 ("The fact that several director defendants sat on the same boards of directors of other companies does not in itself establish lack of independence.") (Delaware law).  Pichler's only alleged entanglement is that he and Neubauer both received their MBA from the University of Chicago at different times – Pichler in 1963 and Neubauer in 1965.  Putting aside that the Complaint makes no attempt to explain how this fact impacts Pichler's independence, finding a lack of independence based solely on such a tenuous connection defies common sense.  By plaintiff's logic, the presiding District Judge in this action would not be deemed independent from defendant Meyer Feldberg, for both received degrees from Columbia University (and Professor Feldberg is also the former dean of Columbia's Graduate School of Business).  (¶¶ 29, 103(i).)  And the Complaint makes no allegations at all of any entanglements involving Levinson, Whittington, or Bollenbach.  (*See* ¶¶ 24, 30, 103.)

### B.    Plaintiff Fails to Establish that the Board's Authorization of the Company's Stock Buyback Program Was Not a Valid Exercise of Business Judgment.

Under the second prong of *Aronson*, a demand will not be excused unless plaintiff alleges sufficient facts to create a reasonable doubt that a challenged board decision – in this case, the board's authorization of the stock buyback program – was not a valid exercise of business judgment.  473 A.2d at 814.  "Specifically, the plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason

to doubt that the board was adequately informed in making the decision." *J.P. Morgan*, 906 A.2d at 824 (internal quotations omitted). In making this showing, "[p]laintiff faces a *substantial burden*, as the second prong of the *Aronson* test is directed to *extreme cases* in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review." *Greenwald v. Batterson*, No. 16475, 1999 WL 596276, at *7 (Del. Ch. July 26, 1999) (internal quotations omitted) (emphasis added). Plaintiff has not carried its burden here.

The Complaint alleges that the board violated its fiduciary duties in authorizing the Company's stock buyback program in February 2007 because Macy's stock was artificially inflated at the time of the authorization. (¶¶ 12, 79. 105.)[15] But as discussed in detail above, the Complaint fails to allege with particularity that the board knew or recklessly disregarded that the Company's sales forecasts were inaccurate or that Macy's stock price was inflated.[16] *See White*, 783 A.2d at 553 (second prong of *Aronson* not satisfied where "the particularized allegations in the complaint do not adequately support the plaintiff's theory that the board knew (or proceeded in face of an unjustifiable risk)" of corporate misconduct in making the challenged business decision). Nor does the Complaint allege any other facts about the board's decision-making process in authorizing the stock buyback – *e.g.*, when the board met to consider this decision, the length of the meeting, the information or reports the board was given at the meeting, and what if any professional guidance the board relied upon. *See Litt v. Wycoff*, No. 19083-NC, 2003 WL

---

[15] Notably, the Complaint does not allege that the board actually approved any particular repurchase of Macy's stock at any particular price or at any particular time. Rather, the board merely authorized management to spend a certain amount of money "to repurchase shares from time to time in the open market or in other negotiated transactions." (2/27/07 8-K, Platt Decl. Ex. L.)

[16] Unlike the *Rales* test and the first prong of the *Aronson* test – which focus on the composition of the board at the time the plaintiff filed its action – the second prong of *Aronson* focuses on the board that made the challenged business decision. *See Rales* 634 A.2d at 933 (second prong of *Aronson* "focuses on the substantive nature of the challenged transaction and the board's approval thereof") (internal quotations omitted). That distinction is not significant here, for the only difference between the two boards was that Bollenbach replaced Stiritz.

-20-

1794724, at *6 (Del. Ch. Mar. 28, 2003) (second *Aronson* prong not satisfied where "[t]he Complaint does not allege any particularized facts regarding the process by which the Board initiated or approved the challenged actions," or "that the Board failed to obtain appropriate legal advice or other professional guidance before implementing" the challenged actions); *Akins v. Cobb*, No. 18266, 2001 WL 1360038, at *1 (Del. Ch. Nov. 1, 2001) ("While the complaint contains many conclusory statements, it lacks any facts regarding the process used to make, or the substantive basis for, the . . . board's decision.").  And the Complaint certainly does not challenge the legitimacy of the board's business reason for the stock buyback program – to invest in the Company[17] – or make any factual allegation showing that this was not the real reason for the program.

The mere allegation that the authorization was made at a time when the Company's stock was supposedly "inflated" falls far short of satisfying plaintiff's burden.  *Cf. Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (second prong of *Aronson* not satisfied where "[t]he complaint merely alleges that [the company's financial advisors] were overcompensated.").  Nothing in the Complaint leads to the conclusion that this is an "extreme case" requiring an abrogation of the demand requirement.

## II.    The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

In addition to the unexcused lack of a pre-suit demand, the Complaint suffers from the further fatal flaw of failure to state a claim upon which relief can be granted.

### A.    The Complaint Fails to Satisfy Rule 9(b) and the PSLRA.

Plaintiff's § 10(b) claim (and its other claims that sound in fraud) must be dismissed

---

[17] *See* Transcript of Federated's Fourth Quarter 2006 Earnings Conference Call at 3-4, dated Feb. 27, 2007 ("[W]e believe in our future and that buying our stock at current levels will prove to be a great investment for the Company."), Platt Decl. Ex. M.  Public corporations commonly implement such programs to invest in their own shares for any number of well-accepted reasons.  *See* Missy Piccioni, Note, *A Regulatory Response By the Securities and Exchange Commission to the Terrorist Attacks on America – Did the Issuer Repurchase Relief Make a Difference?*, 34 Rutgers L.J. 565, 568-71 (2003).

pursuant to Rule 9(b) and the PSLRA because the Complaint lacks sufficiently particular allegations of falsity and scienter.

Rule 9(b) and the PSLRA require a § 10(b) plaintiff to explain, through particularized pleadings, "how" the challenged statements "were false or misleading." *Caiafa v. Sea Containers Ltd.*, No. 06 Civ. 2565(RMB), 2007 WL 2815633, at *7 (S.D.N.Y. Sept. 25, 2007) (internal quotations omitted). The Complaint here alleges that the Company's public statements regarding its expectations about the merger with May and its first quarter 2007 financial projections were false and misleading "because the Individual Defendants knew of May's pre and post-Merger sales lag." (¶ 76; *see also* ¶¶ 11, 61, 65, 85, 88, 119, 121.) This allegation is fatally flawed, for Macy's never concealed that sales in the former May stores were lagging. Its SEC filings expressly disclosed that sales at the former May stores "continue[d] to lag." (8/9/06 8-K, Platt Decl. Ex. C; 11/2/06 8-K, Platt Decl. Ex. D.) Thus, the essential premise of plaintiff's fraud claims is erroneous.

In any event, all of the Company's alleged misstatements were forward-looking statements that accompanied "meaningful cautionary language" indicating that actual results might differ from the Company's expectations and projections. (*See* Platt Decl. Exs. E-J.) The alleged misstatements therefore come under the protection of the "bespeaks caution" doctrine and the PSLRA's safe-harbor for forward-looking statements. *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d at 586 (citing 15 U.S.C. § 78u-5(c)(1)(A)) (Holwell, J.). "The only exception to this rule is that there may be liability where (1) the forward-looking statement was made with actual knowledge that it was false; or (2) where the forward-looking statement misrepresents present facts." *Id.* (internal quotations omitted). The Complaint does not satisfy this exception. While the Company's financial projections were not entirely accurate in hindsight, that does not mean that they were known to be unachievable at the time they were made. *See Shields v.*

-22-

*Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[M]isguided optimism is not a cause

of action, and does not support an inference of fraud.  We have rejected the legitimacy of

'alleging fraud by hindsight.'").  Moreover, while the Complaint accurately states that Macy's

missed its revenue and same-store sales projections for the first quarter 2007, it omits that Macy's

met its projections for first quarter 2007 earnings per diluted share.  (5/16/07 8-K, Platt Decl. Ex.

J.)  This undermines any allegation that Macy's financial projections for the quarter were

knowingly false when they were made.  *See IAC/InterActiveCorp*, 478 F. Supp. 2d at 587.

Rule 9(b) and the PSLRA also require a particularized pleading of facts giving rise to a

"strong inference" of scienter that is "cogent and compelling."  *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).  A plaintiff may establish a strong inference of

scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to

commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or

recklessness."  *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

"'Where motive is not apparent, it is still possible to plead scienter by identifying circumstances

indicating conscious behavior by the defendant, though the strength of the circumstantial

allegations must be correspondingly greater.'"  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir.

2001).  "In order to plead recklessness, plaintiffs must specifically allege[] defendants'

knowledge of facts or access to information contradicting their public statements."  *Caiafa*, 2007

WL 2815633, at *7 (internal quotations omitted).  "And, generally, [w]here plaintiffs contend

defendants had access to contrary facts, [plaintiffs] must specifically identify the reports or

statements containing this information."  *Id.* (internal quotations omitted).

The Complaint does not come close to making any of these showings.  It alleges merely

that the Individual Defendants must have been in possession of material non-public information –

by virtue of their positions as officers and/or directors of the Company – that showed that the

-23-

merger integration was failing and that Macy's sales for the first quarter 2007 would be disappointing.  (¶¶ 11, 43, 60, 67, 76, 101, 119)  Such conclusory allegations routinely have been held insufficient to establish scienter.  *In re Aegon N.V. Sec. Litig.*, No. 03 Civ. 0603(RWS), 2004 WL 1415973, at *17 (S.D.N.Y. June 23, 2004); *IAC/InterActiveCorp*,  478 F. Supp. 2d at 604-05; *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000).  Here, the Complaint fails to cite a single document, report, or other particularized item of information suggesting that the Individual Defendants knew or believed that Macy's sales projections were inaccurate, and yet issued them anyway.  This is an impermissible claim of "fraud by hindsight," pure and simple.

### B.     The Complaint Fails to Overcome the Protections of the Business Judgment Rule.

The Complaint asserts several breach-of-fiduciary-duty claims for improper financial reporting (¶¶ 124-29), insider selling (¶¶ 130-34), abuse of control (¶¶ 135-39), and gross mismanagement (¶¶ 140-44).  As discussed extensively above, however, the Complaint utterly fails to allege with particularity that any director was interested or lacked independence, or otherwise violated his or her fiduciary duties in making any business decision.  Nor does the Complaint come close to alleging that the directors failed to adequately monitor the Company.  As the Supreme Court of Delaware has recently re-affirmed, "'only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability.'"  *Stone*, 911 A.2d at 364 (quoting *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996)).  No such failure is alleged by plaintiff here.  As a result, the Complaint has failed to overcome the presumption of the business judgment rule –

-24-

that the directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812.

### C.    Plaintiff's Claims for Waste and Unjust Enrichment Should Be Dismissed.

The Complaint does not make out a claim of waste, for nowhere does it allege that the Company engaged in "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Brehm*, 746 A.2d at 263 (internal quotations omitted). Nor does it properly allege any benefit that the Individual Defendants are unjustly retaining at the Company's expense – the required showing for making out an unjust enrichment claim. *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999). Indeed, plaintiff's claims for waste and unjust enrichment are based entirely on the same defective allegations that underlie plaintiff's fraud-based claims – that the Individual Defendants knew or recklessly disregarded that the Company had made false or misleading public statements about the merger integration and its first quarter 2007 projections. (*See* ¶¶ 145-51.) Accordingly, these claims also should be dismissed.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated:  November 8, 2007                    Respectfully submitted,


                                            *s/ John M. Newman, Jr.*
                                            John M. Newman, Jr. (JN-5426)
                                            Geoffrey J. Ritts (GR-4270)
                                            Michael A. Platt (MP-7423)
                                            JONES DAY
                                            North Point
                                            901 Lakeside Avenue
                                            Cleveland, OH  44114
                                            Telephone:  (216) 586-3939
                                            Facsimile:  (216) 579-0212

CLI-1561983v3

Arthur J. Margulies (AM-7777)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: ajmargulies@jonesday.com

*Attorneys for Terry J. Lundgren, Karen M. Hoguet, Sara Levinson, Craig E. Weatherup, Joseph Neubauer, Joseph A. Pichler, Joyce M. Roche, Meyer Feldberg, Marna C. Whittington, Karl M. von der Heyden, William P. Stiritz, Joel A. Belsky, Dennis J. Broderick, Thomas G. Cody, Thomas L. Cole, Janet E. Grove, and Susan D. Kronick*

CLI-1561983v3

## CERTIFICATE OF SERVICE

The foregoing document was served on counsel of record on November 8, 2007 by

electronic mail through the Court's CM/ECF system and by Federal Express to the following:

Thomas G. Amon
Law Offices of Thomas G. Amon
500 Fifth Avenue, Suite 1650
New York, New York  10110
Telephone:  (212) 810-2431
Facsimile:  (212) 810-2427
Email:  tamon@amonlaw.com

Brian J. Robbins
Jeffrey P. Fink
Ashely R. Palmer
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, California  92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
Email:  notice@ruflaw.com

George E. Barrett
Douglas S. Johnston, Jr.
Timothy L. Miles
Barrett, Johnston & Parsley, LLC
217 Second Avenue North
Nashville, Tennessee  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

Mitchell F. Borger
Michael E. Kreitman
Joann Nelson
Macy's, Inc
151 West 34th Street
13th Floor
New York, NY 10001

*s/ Arthur J. Margulies*