UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, Derivatively On Behalf of MACY'S, INC., | ) ) ) ) | Case No. 1:07-cv-05862-RJH  ECF |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| TERRY J. LUNDGREN, KAREN M. HOGUET, SARA LEVINSON, CRAIG E. WEATHERUP, JOSPEH NEUBAUER, JOSPEH A. PICHLER, JOYCE M. ROCHE, MEYER FELDBERG, MARNA C. WHITTINGTON, KARL M. VON DER HEYDEN and WILLIAM P. STIRITZ, JOEL A. BELSKY, DENNIS J. BRODERICK, THOMAS G. CODY, THOMAS L. COLE, JANET E. GROVE and SUSAN D. KRONICK, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| -and- | ) ) | |
| MACY'S, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SHAREHOLDER DERIVATIVE COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .......................................................................................3

III.    LEGAL STANDARDS ...........................................................................................4

    A.      Applicable Legal Standards for a Motion to Dismiss...............................4

    B.      Applicable Legal Standard for Demand Futility.......................................5

IV.     ANY DEMAND ON MACY'S BOARD WOULD HAVE BEEN FUTILE ......................7

    A.      All Defendants Are Imputed to Have Knowledge About Macy's Core
        Business and Related Misconduct Making Demand Futile .......................7

    B.      Demand Was Also Futile Based Upon a Reasonable Doubt that a Majority
        of the Board is Disinterested Due to Their Illegal Insider Selling...........8

    C.      Demand Was Futile as to the Audit Committee Defendants Because They
        Are Interested Based Upon a Reasonable Doubt that They Face a
        Sufficiently Substantial Threat of Liability ............................................10

    D.      Plaintiff Also Raises a Reasonable Doubt as to a Majority of Board
        Defendants' Independence Due to Their Personal and Business
        Entanglements......................................................................................12

    E.      Demand upon the Entire Macy's Board Would Have Been Futile Under
        the Second Prong of *Aronson* Because Defendants' Buyback Authorization
        Was Not the Product of Valid Business Judgment .................................13

    F.      Based on the Totality of the Circumstances, Demand Would Have Been
        Futile ..................................................................................................14

V.      The Complaint States a Claim Upon Which Relief Can be Granted. ................16

    A.      Pleading Standard Applicable to Plaintiff's Individual Causes of Action .............16

    B.      The Complaint Satisfies Rule 9(b) and the PSLRA................................17

        1.      Plaintiff Has Sufficiently Pled that the Statements Were False or
            Misleading.................................................................................17

        2.      Plaintiff Has Sufficiently Pled Scienter Under Rule 9(b) and the
            PSLRA .....................................................................................19

C.     The Individual Defendants Cannot Hide Behind the Business Judgment Rule to Avoid the Consequences of Failing to Act in the Best Interests of Macy's ..................................................................................................21

D.     The Exculpatory Provision in Macy's Certificate of Incorporation Does Not Exempt the Individual Defendants from Liability ..........................................22

E.     Plaintiff Has Stated a Claim for Unjust Enrichment..............................................23

F.     Plaintiff Has Stated A Claim For Waste................................................................24

VI.     CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Amaker v. Weiner,*
  179 F.3d 48 (2d Cir. 1999)...................................................................... 2

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ...................................................................... 5

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)...................................................................... 20

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007)............................................................................ 4

*Beneville v. York,*
  769 A.2d 80 (Del. Ch. 2000)................................................................... 6

*Bergstein v. Tex. Int'l Co.,*
  453 A.2d 467 (Del. Ch. 1982)................................................................. 14

*Braddock v. Zimmerman,*
  906 A.2d 776 (Del. 2006) ....................................................................... 9

*Brass v. Am. Film Techs., Inc.,*
  987 F.2d 142 (2d Cir. 1993).................................................................... 2

*Brehm v. Eisner,*
  746 A.2d 244 (Del. 2000) .................................................................... 5, 6

*Cede & Co. v. Technicolor, Inc.,*
  634 A.2d 345 (Del. 1993) ....................................................................... 22

*Cinerma, Inc., v. Technicolor, Inc.,*
  636 A.2d 956 (Del. 1994) ....................................................................... 22

*Conley v. Gibson,*
  355 U.S. 41 (1957)................................................................................... 4

*Curtis v. Connly,*
  U.S. 260, 264 (1921)................................................................................ 11

*Drage v. Procter & Gamble,*
  694 N.E.2d 479 (Ohio Ct. App. 1997) .................................................. 15

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005)................................................................................. 4

*Edgeworth v. First Nat'l Bank,*
  677 F. Supp. 982 (S.D. Ind. 1988) ................................................................ 14

*Emerald Partners v. Berlin,*
  726 A.2d 1215 (Del. 1999), aff'd. 840 A.2d 641 (Del. 2003) ........................... 23

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
  343 F.3d 189 (2d Cir. 2003) ............................................................................ 5

*Global Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) ............................................................................ 2

*Goldman v. Belden,*
  754 F.2d 1059 (2d Cir. 1985) .......................................................................... 2

*Gomez v. Toledo,*
  446 U.S. 635 (1980) ....................................................................................... 23

*Grimes v. Donald,*
  673 A.2d 1207 (Del. 1996) ............................................................................... 6

*Guttman v. Huang,*
  823 A.2d 492 (Del. Ch. 2003) .................................................................... 9, 10

*Harbor Fin. Partners v. Huizenga,*
  751 A.2d 879 (Del. Ch. 1999) ........................................................................ 13

*Hayden v. County of Nassau,*
  180 F.3d 42 (2d Cir.1999) ............................................................................. 22

*Heineman v. Datapoint Corp.,*
  No. 7956, 1990 WL 154149 (Del. Ch. Oct. 9, 1990) ..................................... 16

*In re Abbott Labs. Derivative S'holder Litig.,*
  325 F.3d 795 (7th Cir. 2001) ......................................................................... 22

*In re Biopure Corp. Derivative Litig.,*
  424 F. Supp. 2d 305 (D. Mass. 2006) ................................................. 7, 8, 9, 11

*In re Cendant Corp. Derivative Action Litig.,*
  189 F.R.D. 117 (D.N.J. 1999) ..................................................................... 5, 14

*In re FirstEnergy S'holder Derivative Litig.,*
  320 F. Supp. 2d 621 (N.D. Ohio 2004) .......................................................... 15

*In re Gen. Instrument Corp. Sec. Litig.,*
  23 F. Supp. 2d 867 (N.D. Ill. 1998) ............................................................ 8, 14

*In re IAC/InterActiveCorp Sec. Litig.,*
  478 F. Supp. 2d 574 (S.D.N.Y. 2007) ........................................................ 18, 19

*In re IBM Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998).......................................................................... 18

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ........................................................... 7

*In re Nat'l Auto Credit, Inc. S'holders Litig.*,
    No. 19028, 2003 WL 139768 (Del. Ch. Jan. 10, 2003) .................................. 16

*In re Oxford Health Plans, Inc.*,
    192 F.R.D. 111 (S.D.N.Y. 2000) ................................................................... 14

*In re The Student Loan Corp. Derivative Litig.*,
    No. 17799, 2002 WL 75479 (Del. Ch. Jan. 8, 2002) ...................................... 15

*In re Tower Air, Inc.*,
    416 F.3d 229 (3d Cir. 2005).............................................................. 4, 21, 23

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006)......................................................... 6, 14

*In re Walt Disney Co. Derivative Litig.*,
    825 A.2d 275 (Del. Ch. 2003)...................................................................... 16

*Jackson Nat'l Live Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999)...................................................................... 23

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001 .......................................................................... 20

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ......................................................................................... 5

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2nd Cir. 2007 ........................................................................ 17

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).......................................................................... 22

*Landy v. D'Alessandro*,
    316 F. Supp. 2d 49 (D. Mass. 2004) ............................................................ 17

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
    No. 04 Civ. 0604 (CSH), 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004 ........ 22

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ................................................................................. 12

*Michelson v. Duncan*,
    407 A.2d 211 (Del. 1979) ....................................................................... 24, 25

*Mills v. State,*
    732 A.2d 845 (Del. 1999) ................................................................................. 6

*Mizel v. Connelly,*
    No. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999).................................. 15

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)............................................................................ 20

*Palmer v. A. & L. Seamon, Inc.,*
    No. 94 Civ. 2968 (JFK), 1995 WL 2131 (S.D.N.Y. Jan. 3, 1995) ................. 22

*Parfi Holding AB v. Mirror Image Internet, Inc.,*
    794 A.2d 1211 (Del. Ch. 2001), *rev'd*, 817 A.2d 149 (Del. 2002) ................. 13

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ......................................................................... passim

*Rattner v. Bidzos,*
    No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ............................ 10

*Sanders v. Wang,*
    No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ................................ 23

*Schock v. Nash,*
    732 A.2d 217 (Del. 1999) ............................................................................... 23

*Seminaris v. Landa,*
    662 A.2d 1350 (Del. Ch. 1995)....................................................................... 10

*Smith v. Van Gorkum,*
    488 A.2d 858 (Del. 1985) ............................................................................... 22

*Solomon v. Pathe Comm'ns Corp.,*
    672 A.2d 35 (Del. 1996) ................................................................................. 16

*Stevelman v. Alias Research Inc.,*
    174 F.3d 79 (2d Cir. 1999).............................................................................. 17

*Streit v. Bushnell,*
    424 F. Supp. 2d 633 (S.D.N.Y. 2006).............................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)..................................................................................... 19

*Telxon Corp. v. Bogomolny,*
    792 A.2d 964 (Del. Ch. 2001)......................................................................... 16

*United States v. Int'l Longshoremen's Ass'n,*
    No. 05-CV-3212, 2007 WL 3196679 (E.D.N.Y. Nov. 1, 2007) ...................... 2

*White v. Panic,*
    783 A.2d 543 (Del. 2001) ............................................................... 24

*Zimmerman v. Braddock,*
    No. 18473-NC, 2005 WL 2266566 (Del. Ch. Sept. 8, 2005) ............................................. 9

**STATUTES AND RULES**

15 U.S.C.
    §78u-4(b)(2) ................................................................................ 20

15 U.S.C.
    §78u-5(c)(1)(A) ............................................................................ 18

8 Del. C.
    §102(b)(7) ................................................................................. 23

Fed. R. Civ. P. 12(b)(6) ......................................................................... 4

Fed. R. Civ. P. 9(b) ........................................................................... 18

Rule 12(b)(6) ................................................................................ 22

Plaintiff, derivatively on behalf of nominal defendant Macy's, Inc. ("Macy's" or the "Company"), respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Shareholder Derivative Complaint.

## I.    INTRODUCTION

Macy's, formerly known as Federated Department Stores, Inc., is the second-largest department store franchise in the United States. In August 2005, Macy's doubled the number of its stores by acquiring May Department Stores, Inc. ("May") for $11.7 billion (the "Merger"). May, however, suffered from declining sales dating back to 2003. This historical decline was well known to defendants, especially defendants William Stiritz ("Stiritz") and Joyce M. Roche ("Roche"), former directors of May and members of May's Finance Committee and Audit Committee. Unfortunately, sales at former May stores continued to lag post-Merger and would most likely continue to do so because Macy's divested itself of May's greatest financial hope, its Bridal Group. Despite defendants' laudatory comments concerning the success of the Merger and Macy's accelerated growth, the May store integration would have a negative impact on Macy's sales and earnings during the Relevant Period, *i.e.*, August 2005 through October 2007. Indeed, in May 2007, Macy's issued a press release which announced, in part, disappointing 1Q:07 sales and disclosed May's customers' rejection of the integration and declines in same-store sales. This disclosure caused Macy's stock price to plummet 38% below the Relevant Period high, erasing more than $3 billion in market capitalization.

Plaintiff brings this shareholder derivative action on behalf of Macy's and against certain of its officers and directors for their violations of federal and state law during the Relevant Period. Specifically, plaintiff's First Amended Verified Shareholder Derivative Complaint (the "Complaint) alleges that Macy's Board of Directors (the "Board") breached its fiduciary duties to Macy's, in part, by: (i) reporting forecasted sales and earnings that were grossly inaccurate and in blatant disregard to known information concerning the history of declining sales at May and the material affect that the Merger would have on Macy's financial statements; (ii) not disclosing that the failing integration of former May stores would result in lower sales and thus, lower profits; and (iii) failing to disclose that 1Q:07 results would not meet expectations of investors, analysts or shareholders. These

improprieties caused Macy's stock price to artificially rise, allowing defendants to direct the Company to repurchase over $2 billion of its own shares and facilitating certain defendants' sales of their own Macy's stock for over $53 million in proceeds.

Defendants completely ignore plaintiff's particularized allegations and the reasonable inferences therefrom and have filed a motion with this Court seeking to dismiss this action with prejudice on the grounds of failing to state a claim upon which relief can be granted and for failing to adequately allege why a demand on Macy's Board would have been futile.[1]  At the time plaintiff initiated this action, Macy's Board was comprised of ten members: defendants Terry J. Lundgren ("Lundgren"), Joseph Neubauer ("Neubauer"), Roche, Marna C. Whittington ("Whittington"), Joseph A. Pichler ("Pichler"), Meyer Feldberg ("Feldberg"), Karl M. von der Heyden ("von der Heyden"), Sara Levinson ("Levinson"), Craig E. Weatherup  ("Weatherup") and Stephen F. Bollenbach ("Bollenbach").[2]  To survive the motion to dismiss, the parties agree that plaintiff need only allege a reasonable doubt that five members of the Board could impartially consider a demand. Plaintiff has easily done so.

---

[1] Relying on extraneous "evidence," defendants attempt to somehow minimize plaintiff's allegations and urge the Court to draw inferences against plaintiff.  Defendants' strategy contravenes the purposes of a Rule 12(b)(6) motion and under the circumstances is manifestly unjust.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (holding that in resolving a 12(b)(6) motion, the district court's "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").  Therefore, Exhibits A-D; K-M attached to Declaration of Michael A. Pratt in Support of Defendants' Motion to Dismiss the Shareholder Derivative Complaint – all of which are outside the Complaint – must not be considered at this stage of the litigation.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999); *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)) ("As indicated by the word 'shall,' the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'"); *United States v. Int'l Longshoremen's Ass'n*, No. 05-CV-3212, 2007 WL 3196679, at *22 (E.D.N.Y. Nov. 1, 2007).

[2] Defendants recently informed plaintiff that non-defendant Bollenbach was appointed to Macy's Board on June 13, 2007, seven days prior to the original complaint.  Memorandum in Support of Defendants' Motion to Dismiss the Shareholder Derivative Complaint ("Defs.' Mem.") at 2 n.3.

## II.    STATEMENT OF FACTS

In December 2004, Macy's began discussing a possible business combination with May. ¶3.[3] Despite May's declining sales dating back to 2003, Macy's acquired May for $11.7 billion. ¶3. After consummation of the Merger, sales in the May stores continued to lag.  The defendants, however, caused or allowed the Company to issue press releases and file documents with the Securities and Exchange Commission ("SEC") touting the Merger's success, which artificially inflated the Company's stock.

During the Relevant Period, defendants directed Macy's to issue statements forecasting an increase of profitability at the old May stores. ¶9.  Although sales growth had declined towards the end of 2006, the Company's public statements continued to report a successful integration process for the former May stores.  ¶10.  These statements promised increasing sales growth and wider operating margins at Macy's.  ¶10.  The May stores integration, however, was actually failing.  ¶11. As a result, sales growth was continuing to decline and the Company's sales projections were grossly overstated.  ¶11.

While Macy's shares were artificially inflated, defendants directed the Company to repurchase over $2 billion of it own shares.  ¶12.  Even worse, certain defendants sold their personal shares, while in possession of this material non-public information, for over $53 million.  ¶12.

Between May 10, 2007 and May 15, 2007, Macy's disclosed that May's customers had actually rejected the store conversion and as a result, the Company's sales had declined.  ¶13. Accordingly, Macy's first quarter 2007 earnings of $5.92 billion fell well short of the Company's forecasted earnings of $6.1 billion.  ¶14.  Sales growth decline was not industry wide, however, and sales actually rose 2.2% at J.C. Penney, 4.3% at Target and 9.5% at Nordstroms during the same period.  ¶14.

Macy's was forced to lower its second quarter sales forecast from $6.2 to $6.1 billion and its profit forecast of  $0.40-$0.45 earnings per share to $0.35-$0.45 earnings per share.  ¶15.  In the

---

[3]  All paragraph ("¶__" or "¶¶__") references are to the Complaint.

wake of the revised forecasts, Macy's value declined 39% from its Relevant Period high as investors lost confidence in the Company's former reputation for accurate financial reporting. ¶15.

As a result of defendants' inexcusable failure to carry out their duties and responsibilities as directors and fiduciaries of Macy's, the Company has and will continue to sustain significant damage. ¶¶89-95. Specifically, Macy's market value has been devastated, the Company has spent significant sums of money investigating and defending itself in related securities fraud lawsuits by which it is now exposed to huge potential liability, has spent over $2 billion to repurchase its shares at artificially inflated prices, and has had its reputation and goodwill severely damaged. ¶91.

## III.    LEGAL STANDARDS

### A.    Applicable Legal Standards for a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) will not be granted if the complaint's "[f]actual allegations ...[are]... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007). In addition, "the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). *See also Streit v. Bushnell*, 424 F. Supp. 2d 633 (S.D.N.Y. 2006) (explaining that in reviewing a complaint for legal sufficiency for the purposes of adjudicating a Rule 12(b)(6) motion, the Court's point of departure is Rule 8(a)(2)). The Supreme Court in *Dura* further stated, "[w]e concede that ordinary pleading rules are not meant to impose a great burden upon a plaintiff." *Dura*, 544 U.S. at 347. *See also In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005) (in complaint for breach of fiduciary duty, gross negligence and waste against directors of corporation, Rule 8 applied and "supporting facts should be alleged, but *only those necessary to provide the defendant fair notice* of the plaintiff's claim and the 'grounds upon which it rests'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated* by *Twombly*).[4] In ruling on this motion to dismiss for

---

[4] Here, as throughout, all emphasis shall be deemed added and all citations shall be deemed omitted.

failure to state a claim upon which relief can be granted, this Court must accept all the allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 194 (2d Cir. 2003). Clearly, the standard to be applied by a court in ruling upon a motion to dismiss places a heavy burden on the moving party in light of the liberal pleading standards of the Federal Rules of Civil Procedure. In this case, the Complaint clearly satisfies these standards and sets forth claims upon which relief can be granted.

**B.    Applicable Legal Standard for Demand Futility**

Pursuant to Federal Rule of Civil Procedure 23.1, a plaintiff in a shareholder's derivative action must allege either: (a) that they have made a demand on the corporation's board of directors to take the requested action; or (b) the reasons for not making demand, *i.e.*, the reasons why demand is futile. Here, for the reasons set forth herein and in the Complaint, plaintiff pleads that making a demand would have been futile.

"[A] court that is entertaining a derivative action ... must apply the demand futility exception as it is defined by the law of the State of incorporation." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). Macy's is headquartered in Yonkers, New York, but incorporated in Delaware. ¶21. All parties agree that the substantive laws of Delaware regarding demand futility apply in connection with the liberal federal pleading standard discussed above. *See* Defs.' Mem. at 1; *Kamen*, 500 U.S. at 108-09. Under Delaware law, it is well settled that demand need not be alleged if the facts pled show that such a demand would have been futile.[5] *Aronson v. Lewis*, 473 A.2d 805, 807 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). As the *Veeco* court stated:

> Under Delaware law, 'Where officers and directors are under an influence which sterilizes their discretion, they cannot be considered proper persons to conduct litigation on behalf of the corporation.' In determining whether demand would be

---

[5] In assessing demand under Delaware law, ***all reasonable inferences must be drawn in the light most favorable to the plaintiff***. *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 127 (D.N.J. 1999). Moreover, a plaintiff is not required to plead evidence, ***nor is proof of success on the merits required***. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

futile, the court, in its discretion, must decide whether, under the particularized facts alleged, a ***reasonable doubt*** is created that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. If ***either*** prong is satisfied, demand is excused.

*In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 274 (S.D.N.Y. 2006).[6]

Plaintiff need only plead particularized allegations that create a reasonable doubt as to the disinterestedness and independence of five out of the ten members of the Board at the time this action was commenced. *See Beneville v. York*, 769 A.2d 80, 85-86 (Del. Ch. 2000) (court found demand excused as futile when board could not exercise truly unconflicted judgment reasoning that impartial board members are unable to unilaterally cause the corporation to act on a demand). A reasonable doubt is not a difficult burden for a plaintiff to meet. A reasonable doubt is defined as "a doubt based upon ***reason and common sense*** ... [which] intelligent, reasonable and impartial people may honestly entertain...." *Mills v. State*, 732 A.2d 845, 851 (Del. 1999). This reasonable doubt standard promotes a strong public policy, since "the derivative suit ... [is a] potent tool[ ] to redress the conduct of a torpid and unfaithful management." *Rales*, 634 A.2d at 933. It is further particularly appropriate in derivative suits, because plaintiffs typically have not had the benefit of discovery. *Id.* at 934 (requiring a reasonable probability of success on the merits would be "an extremely onerous burden to meet at the pleading stage without the benefit of discovery"). The reasonable doubt standard "is sufficiently flexible and workable to provide the stockholder with 'the keys to the courthouse' in an appropriate case where [as here,] the claim is not based on mere suspicions or stated solely in conclusory terms." *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Thus, under

---

[6] Where a plaintiff has not made a demand on a board of directors and the subject of the derivative action is not a business decision of the board, the court must determine "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile." *Rales*, 634 A.2d at 934. Here, plaintiff's allegations should be reviewed under both *Rales* and *Aronson*. While plaintiff's allegations concerning Macy's inaccurate financial projections and defendants' insider trading may be analyzed under *Rales*, the Board's decision to authorize the stock buyback must be analyzed under *Aronson*.

Delaware law, plaintiff's burden at the pleading stage is only to allege particularized facts which, if true, would give a reasonable shareholder reason to doubt that a majority of a board had the ability to disinterestedly, independently and dispassionately consider a demand. As discussed *infra*, plaintiff has done so.

## IV.    ANY DEMAND ON MACY'S BOARD WOULD HAVE BEEN FUTILE

### A.    All Defendants Are Imputed to Have Knowledge About Macy's Core Business and Related Misconduct Making Demand Futile

"[I]n cases [such as here] in which a company's primary product or service is in jeopardy, courts have been willing to impute that knowledge to the company's officers and directors." *See In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305, 308 (D. Mass. 2006) (imputing knowledge of adverse information concerning a company's primary product on the company's officers and directors);[7] *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387-88 (E.D.N.Y. 2003) (listing cases in which courts inferred defendants' knowledge of problems with a company's core product or most significant contract).

Here, Macy's acquisition of May, costing at least $11.7 billion was a major transaction for Macy's that ***doubled*** the number of Macy's stores. ¶3. During the relevant period, Macy's press releases repeatedly disclosed that the "***Merger is expected to have a material effect on the Company's consolidated financial position, results of operations and cash flows.***" ¶¶70, 72-73, 75. The successful integration of May stores and comparable store sales growth was a primary focus in generating revenue and determining Macy's financial projections. ¶¶69-75. As a result of the months of due diligence prior to the Merger, the Board would have been apprised of the history of declining sales at May and the potential negative effect from divesting of May's key investments such as its Bridal Group. In fact, defendants concede that Macy's reported in one of its SEC filings that sales at May stores continued to lag. What defendants try to ignore is that, in blatant disregard to this knowledge, defendants misleadingly attributed the sales decline to short-term disruptions in

---

[7] The *Biopure* court went on to state that "[a]rgument over whether the particular officer and director defendants in this case were sufficiently 'inside' to be deemed to have had knowledge is factual, and can be made at a later stage of this litigation." *Id.*

business due to remodeling and other transition activities. Rather than admitting that the sales lag was due to a historical sales lag at May locations and a failing integration, the Company reported an expected increase in same-store sales and expected earnings and suggested that the sales lag would end as soon as the transition activities were completed. Given the Merger's material effect on the Company's consolidated financial position, along with the speculation over whether sales and former May stores would continue to decline, each of the directors should be imputed with the knowledge that the May store integration was actually failing and the Company's forecasted earnings were false and misleading. *See Biopure*, 424 F. Supp. 2d at 308. Thus, defendants' knowledge of the wrongdoing alleged in the Complaint can be inferred and demand was futile as to the entire Board.

### B. Demand Was Also Futile Based Upon a Reasonable Doubt that a Majority of the Board is Disinterested Due to Their Illegal Insider Selling

A reasonable doubt as to disinterestedness exists if a plaintiff can show that "a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders" *or* that a director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936. Without a doubt, insider trading confers this type of personal financial benefit. *In re Gen. Instrument Corp. Sec. Litig.*, 23 F. Supp. 2d 867, 875 (N.D. Ill. 1998) (applying Delaware law) (court found demand futile when complaint sought redress for conduct that gave rise to the personal financial benefit for which only the directors received). As demonstrated below, three of the Board members had a personal interest in a challenged transaction that is separate from Macy's and therefore cannot be impartial. ¶101.

Defendants Lundgren, Levinson and Weatherup (certain of the "Insider Selling Defendants"), sold a total of 339,000 shares of Macy's stock while in possession of adverse, material non-public knowledge for proceeds of over $15.5 million. ¶¶22, 24-25, 96, 101. This illegal selling clearly demonstrates the futility of demand on three members of Macy's Board.[8]

_____

[8] While defendants argue that demand cannot be futile because there are not a majority of insider sellers, Defs.' Mem. at 14-15, defendants ignore that the three Insider Selling Defendants on the Board, coupled with the other interested directors, create a majority of Board members as to whom demand would have been futile.

Under Delaware law, to adequately allege that a director is "interested" for purposes of demand futility based on insider selling, plaintiffs need only plead facts which support the *inference* "'that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information.'" *Zimmerman v. Braddock*, No. 18473-NC, 2005 WL 2266566, at *8 (Del. Ch. Sept. 8, 2005), *rev'd by Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006). Such allegations are sufficient where the complaint alleges "directly *and by imputation*" that the directors had knowledge of the material information and made their trades on that basis. *Id.*; *In re Biopure*, 424 F. Supp 2d at 308.

The case of *Guttman v. Huang*, relied on by defendants, is instructive. 823 A.2d 492 (Del. Ch. 2003). In *Guttman*, plaintiff failed to allege particularized information as to *what* adverse, non-public information defendants *knew* when they sold their shares, how they obtained this information, or the *unusual and suspicious timing* of the trades. *Id.* at 503. The *Guttman* court found that the absence of any fact pleading supporting a *rational inference* that any of the insider selling directors had some basis to believe that the company's financial statements were materially misleading was fatal to plaintiff's effort to show demand excusal. *Id.* at 504.

Contrary to defendants' contention, plaintiff here has shown what information the Insider Selling Defendants knew, how they obtained the information, and why the trading was suspicious. For example, through months of extensive due diligence prior to the $11.7 billion acquisition of May, Lundgren, Levinson and Weatherup – as members of Macy's Board – would have discovered that May had a history of declining same store sales. ¶3. Lundgren, Levinson and Weatherup would have also discovered that May was relying on certain of its investments, including its Bridal Group, to benefit future results. ¶3. Soon after consummation of the Merger, however, Macy's Board caused the Company to divest of May's Bridal Group. ¶3. Lundgren, Levinson and Weatherup, therefore, knew that the Company may suffer from declining sales. In fact, as discussed above, the Company admitted that there was a lag in sales, but falsely attributed this decline to short-term disruptions in business. Based upon these facts alone, there is a rational inference that the Insider Selling Defendants knew that Macy's repeated assurances that the Merger would accelerate same-store sales growth was false and misleading. ¶¶72-75.

Moreover, it was only until after Macy's sales figures included sales from the former May stores that Lundgren, Levinson and Weatherup began to dump their shares. Sales from former May stores were included in Macy's sales figures for the first time during February 2007. ¶9. Macy's, however, did not disclose that the Company's sales had declined until May 2007. During this three-month period of time, Macy's share price increased dramatically and Lundren, Levinson and Weatherup sold over $15.5 million worth of their shares of Macy's stock. ¶96. In fact, on the day before Macy's share price climbed as high as $46.70 per share, Lundgren sold over $14.9 million worth of his Macy's stock. ¶¶12, 96. While Lundgren, Levinson and Weathrup sold millions worth of their Macy's stock, the misrepresentations contained in the Company's public announcements and filings artificially inflated the Company's shares. Thus, plaintiff has adequately alleged that these Insider Selling Defendants sold substantial shares of Macy's stock at a time when, at least, "**one can infer** from [the] particularized pled facts that they knew material, non-public information about the company's financial condition." *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at *11 n.59 (Del. Ch. Sept. 30, 2003); *Guttman*, 823 A.2d at 502.

Plaintiff has shown what adverse, non-public information defendants knew when they sold their shares and how they obtained this information. Moreover, as discussed above, defendants' knowledge of material undisclosed information can also be inferred. Because the Complaint seeks redress for illegal stock sales that gave rise to the personal financial benefit for which the Insider Selling Defendants alone have received, defendants Lundgren, Levinson and Weatherup cannot impartially consider a demand, thus any demand by plaintiff upon these defendants would have been futile.

C.    **Demand Was Futile as to the Audit Committee Defendants Because They Are Interested Based Upon a Reasonable Doubt that They Face a Sufficiently Substantial Threat of Liability**

Demand is also shown based upon a reasonable doubt that directors "face a **sufficiently substantial threat** of personal liability to compromise their ability to act impartially on a demand." *Guttman*, 823 A.2d at 503. *See also Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995)

(court analyzed question of whether directors' threat of personal liability was *substantial enough* to render them interested).[9]

Due to their positions on the Board's Audit Committee during the Relevant Period, defendants Neubauer, Roche, Whittington and von der Heyden had a special duty to know and understand Macy's financial statements and ensure compliance with legal and regulatory requirements. ¶56. As discussed in detail above, these defendants knew that sales were continuing to lag, they knew that Macy's divested of May's key investment and they knew that the integration would have a material affect on the Company's financials. Thus, while in possession of this information and while the May store integration was failing, which would adversely affect Macy's financial projections, Neubauer, Roche, Whittington and von der Heyden allowed the Company to file Forms 8-K, 10-Q and 10-K and public statements that represented that the Merger was a success.[10] ¶104. *See Biopure*, 424 F. Supp. 2d at 308; *see also Curtis v. Connly*, U.S. 260, 264 (1921) (finding that even if defendant directors were not expressly aware of the falsity of the statements they caused the company to make, they are charged with that knowledge as directors of the company). Plaintiff's allegations in the Complaint demonstrate that these four defendants are interested for purposes of a demand futility analysis because they face a substantial likelihood of liability for abdicating their responsibilities as members of the Audit Committee and breaching their

---

[9] A "substantial likelihood" of liability is sufficient, but not necessary, to establish demand futility, as it gives rise to a reasonable doubt that the director is "able to act free of personal financial interest and improper extraneous influences" in "carrying out [the] tasks" of responding to a demand letter. *See Rales*, 634 A.2d at 935.

[10] Defendants inaccurately state that "[t]he law in Delaware is clear that directors are 'fully protected' in relying on an expert such as an accountant." Defs.' Mem. at 12 n.11. Contrarily, any claimed reliance by Neubauer, Roche, Whittington and von der Heyden on an accountant was not in good faith. As described above, the Board would have been apprised of the history of declining sales at May, the potential negative effect from divesting of May's Bridal Group, the success or failure of the May integration and its affect on Macy's financials. The issuance of financial statements touting the Merger's success and the future increase in same store sales was false and misleading and in blatant disregard to the material information concerning the May store integration. *See Brehm v. Eisner*, 746 A.2d 244, 262 (Del. 2000) (explaining that a plaintiff may survive a Rule 23.1 motion to dismiss where an expert has advised the board in its decision-making process if the plaintiff alleges particularized facts concerning, among other things, that the Board's reliance was not in good faith.).

fiduciary duties by recommending the filing of false and/or misleading information with the SEC and failing to ensure the integrity of the Company's internal controls and disclosure controls.[11] ¶¶56, 77, 104; *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) ("When the directors disseminate information to stockholders when no stockholder action is sought, the fiduciary duties of care, loyalty and good faith apply. Dissemination of false information could violate one or more of those duties.").[12]

Consequently, by breaching their fiduciary duties, these defendants face a sufficiently substantial likelihood of liability establishing that any demand upon them would be futile.

### D.    Plaintiff Also Raises a Reasonable Doubt as to a Majority of Board Defendants' Independence Due to Their Personal and Business Entanglements

Demand may also be excused where a complaint alleges that directors had current or past business, personal and employment relationships.[13] Facts concerning "current or past business, personal, and employment relationships with each other and the entities involved", *id.*, or a "long-standing pattern of mutually advantageous business relations" between directors are sufficient to

---

[11] Defendants' argument that the Complaint failed to include the reports or data the Audit Committee saw or was given is without merit. The Audit Committee had a duty to ensure "the integrity of the Company's financial statements," "[r]eview the Company's reports on Form 10-Q and 10-K before they are filed with the SEC," and "[d]iscuss the type of information to be provided and the type of presentation to be made in connection with the Company's earnings releases and financial information and earnings guidance provided to analysts and ratings agencies." ¶56. Thus, a reasonable inference can be made that the Audit Committee reviewed the Company's filings, press releases and other information concerning Macy's financial projections and the success of the Merger.

[12] *Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966, at *6 (N.D. Cal. Jan. 14, 2005) (membership on the Audit Committee during the relevant period may be sufficient to be held liable for allegedly false or misleading information conveyed in annual reports and press releases); *Miller v. Schreyer*, 683 N.Y.S. 2d 51, 55 (App. Div. 1999) (holding it is illogical to expect directors to launch a vigorous investigation into their own mismanagement after the "facts have come to light" as a result of insolvency).

[13] *In re New Valley Corp.*, No. 17649, 2001 WL 50212, at *7 (Del. Ch. Jan. 11, 2001) (requirement met where "members of the current Board have current or past business, personal, and employment relationships with each other and the entities involved"). *See also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) (A reasonable doubt as to a director's independence may be raised "because of financial ties, familial affinity, a particularly close or intimate personal or business affinity or because of evidence that in the past the relationship caused the director to act non-independently *vis à vis* an interested director").

raise a reasonable doubt regarding independence. *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 889 (Del. Ch. 1999); *see also Int'l Equity Capital Growth Fund, L.P. v. Clegg*, No. 14995, 1997 WL 208955, at *5 (Del. Ch. Apr. 22, 1997). Even if "the actual extent of these relationships is not altogether clear" at the pleading stage, "the existence of these interests and relationships is enough to defeat a motion to dismiss." *New Valley*, 2001 WL 50212, at *7.

Defendants Lundgren, Neubauer, Feldberg, von der Heyden and Weatherup all have overlapping ties to Carnegie Hall. ¶103(a). In fact, both Lundgren and Weatherup served as Trustees of Carnegie Hall during the same time. Moreover, von der Heyden, Neubauer, Feldberg and Weatherup have caused millions of dollars in donations to be made to Carnegie Hall. *Id*. In addition, Neubauer has been CEO and Chairman of Aramark since the 1980s, and served on the Aramark board with von der Heyden from 2001-2007. As a result of these entangling relationships, as well as others alleged in plaintiff's Complaint,[14] these directors have a strong incentive to avoid suing each other, thereby showing demand would have been futile. Simply put, these directors "do[] not qualify as [] independent director[s] ... because, 'extraneous considerations' cloud [their] mind[s]." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1231 (Del. Ch. 2001), *rev'd*, 817 A.2d 149 (Del. 2002).

### E.  Demand upon the Entire Macy's Board Would Have Been Futile Under the Second Prong of *Aronson* Because Defendants' Buyback Authorization Was Not the Product of Valid Business Judgment

Defendants Lundgren, Neubauer, Roche, Whittington, Pichler, Feldberg, von der Heyden, Levinson and Weatherup authorized the buyback of over $2 billion of the Company's shares at artificially inflated prices. During February 2007, Macy's sales figures would include for the first time sales from former May stores. ¶9. On February 26, 2007, while defendants caused Macy's to

---

[14] There are also several additional business entanglements alleged in plaintiff's Complaint between and among defendants Lundgren, Neubauer, Roche, Pichler, Feldberg and Weatherup. ¶103.

issue statements emphasizing the Merger's success, the Board approved an additional $4 billion authorization to the Company's share repurchase program. Two days after the Board authorized the buyback, Lundgren sold over 45,000 of his Macy's shares for over $2 million in proceeds. ¶96. Defendants did not cause Macy's to disclose that the Company's forecasted sales and earnings were grossly inaccurate until May 2007, after the Company had repurchased 45 million of its own shares for approximately $2 billion. ¶¶79, 85-86. The Board's decision to authorize the buyback during a time when the directors knew or should have known that May's history of declining sales would likely continue after consummation of the merger and affect the May stores integration and that the Company's forecasted earnings were therefore materially misleading, was not the product of valid business judgment.

**F.    Based on the Totality of the Circumstances, Demand Would Have Been Futile**

Defendants attempt to parse each allegation in the Complaint to view plaintiff's demand futility allegations in isolation and to remark about how conclusory or legally insufficient they are. However, this Court must review plaintiff's particularized allegations in totality and not as independent allegations. *Veeco*, 434 F. Supp. 2d at 274; *McCall v. Scott*, 239 F.3d 808, 816 (6th Cir. 2001) (applying Delaware law); *Cendant*, 189 F.R.D. at 129 (applying Delaware law) ("[T]he transactions should not be evaluated individually to determine whether a majority of the directors was 'interested.' Rather, the Court should determine whether a majority of the directors was interested with respect to the challenged transactions as a whole.").[15]

In addition to the allegations discussed above that raise a reasonable doubt as to the disinterestedness of this Board, plaintiff has pled the following additional facts: (i) defendant

---

[15] The overwhelming majority of courts addressing this issue agree. *See In re Oxford Health Plans, Inc.*, 192 F.R.D. 111, 118 (S.D.N.Y. 2000) (denied motion to dismiss applying Delaware law) (evaluating demand futility in the context of the totality of the circumstances); *In re Gen. Instrument Corp. Sec. Litig.*, 23 F. Supp. 2d 867, 875 (N.D. Ill. 1998) (denied motion to dismiss applying Delaware law) (same); *Edgeworth v. First Nat'l Bank*, 677 F. Supp. 982, 993 (S.D. Ind. 1988) (denied motion for summary judgment applying federal law) (same); *Bergstein v. Tex. Int'l Co.*, 453 A.2d 467, 469 (Del. Ch. 1982) (denied motion to dismiss applying Delaware law) (same).

Lundgren – Macy's President and CEO since February 2003, Chairman of the Board since January 2004 and director since 1997 – cannot faithfully decide, in accord with the Company's best interests, whether to bring an action because it would affect the substantial compensation he receives as a result of his position, ¶¶ 22, 106;[16] (ii) because Pichler, Neubauer, Feldberg, von der Heyden, Levinson and Weatherup, as members of the Compensation and Management Development Committee, singularly control the other defendants' awards, defendants Lundgren, Roche and Whittington would not institute this action against them, ¶107; (iii) certain directors' exposure to liability would be increased in the federal securities actions if they pursue this derivative suit, ¶113; and (iv) if the directors sued each other or certain of Macy's officers, their insurance would not cover the litigation, ¶115.[17] Although defendants contend these particular allegations standing alone are insufficient to overcome plaintiff's demand futility hurdle, they should nevertheless be reviewed as additional factors which weigh in the balance and likewise demonstrate that each of the Board members lack independence and disinterest rendering any demand a futile gesture.[18] Based on the

---

[16] The fact that a director receives substantial financial compensation from his employment is sufficient to raise a reasonable doubt regarding the director's independence from others who have the ability to control his employment and compensation. *See, e.g.*, *Rales*, 634 A.2d at 937 ("there is a reasonable doubt that [an employee-director] can be expected to act independently considering his substantial financial stake in maintaining his current offices"); *In re The Student Loan Corp. Derivative Litig.*, No. 17799, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002) (same); *Mizel v. Connelly*, No. 16638, 1999 WL 550369, at *3 (Del. Ch. July 22, 1999) ("Since [employee-directors] each derive their principal income from their employment at [the corporation], it is doubtful that they can consider the demand on its merits without also pondering whether an affirmative vote would endanger their continued employment.").

[17] *See In re FirstEnergy S'holder Derivative Litig.*, 320 F. Supp. 2d 621, 625 (N.D. Ohio 2004) (finding that demand is excused where director defendants would be forced to abrogate insurance coverage under a directors' and officers' liability policy to bring an action against themselves) (citing *Drage v. Procter & Gamble*, 694 N.E.2d 479, 484 (Ohio Ct. App. 1997) ("Certainly, a provision prohibiting directors from bringing suits against each other would deprive the directors 'of the ability to exercise independent judgment as to the advisability of instituting action against any officer or director for mismanagement, and thereby [divest them] of the power to govern this aspect of the corporation's affairs.'")).

totality of the circumstances, plaintiff has adequately alleged demand was futile and the Complaint must be sustained in its entirety.

## V.    THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.    Pleading Standard Applicable to Plaintiff's Individual Causes of Action

In a shareholder derivative action, once the plaintiff has satisfied the demand futility analysis (as here), a much more lenient standard becomes applicable to plaintiff's causes of action. Delaware courts, which frequently pass on this issue, have repeatedly made clear that the standard for failure to state a claim is "*notably lower* than is true in the context of motions to dismiss for failure to make a presuit demand." *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 974 (Del. Ch. 2001). *See also In re Nat'l Auto Credit, Inc. S'holders Litig.*, No. 19028, 2003 WL 139768, at *12 (Del. Ch. Jan. 10, 2003) (motion to dismiss plaintiff's claims under Rule 12(b)(6), "presents a more lenient standard ... [for] review ... than that posed by the demand requirement"); *Heineman v. Datapoint Corp.*, No. 7956, 1990 WL 154149, at *1 (Del. Ch. Oct. 9, 1990) (derivative action discussing individual causes of action on a motion to dismiss and stating "we ought not lose sight of the generally lenient standards that are appropriate"). The Delaware Supreme Court has made clear that, unlike the particularity requirement for demand futility, notice pleading is all that is required on a motion to dismiss for failure to state a claim. *Solomon v. Pathe Comm'ns Corp.*, 672 A.2d 35, 39 (Del. 1996).

In fact, as here, where a plaintiff has satisfied the demand futility requirement, then under the more lenient notice pleading standards, the causes of action are generally sustained. *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 285 (Del. Ch. 2003) ("Since the standard under Rule

---

[18] Defendants attempt to oversimplify plaintiff's demand futility allegations by dubbing them "would not sue themselves" allegations and citing a list of cases in support of this proposition. Defs.' Mem. at 8-9. As demonstrated herein, however, plaintiff has pled much more than just that defendants "would not sue themselves."

12(b)(6) is less stringent than the standard under Rule 23.1, a complaint that survives a Rule 23.1 motion to dismiss generally will also survive a Rule 12(b)6) motion to dismiss, assuming that it otherwise contains sufficient facts to state a cognizable claim.").

Federal courts are in accord. *See, e.g., Landy v. D'Alessandro,* 316 F. Supp. 2d 49, 72, 75-76 (D. Mass. 2004) (after finding the plaintiff had adequately pled demand futility, discussing the much more lenient notice pleading standards under Federal Rules 12 and 8 applicable to plaintiff's claims and stating, "*I will not dismiss under Rule 12(b)(6) the claims that survived Rule 23.1*."); *FirstEnergy*, 320 F. Supp. 2d at 627 (sustaining cause of action on motion to dismiss for failure to state a claim after finding plaintiffs had adequately alleged demand futility).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2nd Cir. 2007). A plaintiff need plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S. Ct. at 1960. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965.

### B.    The Complaint Satisfies Rule 9(b) and the PSLRA.

#### 1.    Plaintiff Has Sufficiently Pled that the Statements Were False or Misleading

Both the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b) require plaintiffs alleging a §10(b) claim to explain why the challenged statements were fraudulent. *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999). Here, despite defendants' assertions to the contrary, plaintiff has sufficiently alleged facts demonstrating why the challenged statements were fraudulent. Plaintiff alleges that between August 2005 and April 2007, the individual defendants caused the Company to issue statements regarding the success of the Merger.

¶¶3, 5-11, 67, 69-75, 80-83.  Indeed, these statements touted the profitability of the acquisition for Macy's and stated that the Company expected increased sales growth as a result of the acquisition. ¶¶6, 8, 10, 69-75, 80-83.  The individual defendants issued these statements despite having knowledge that prior to the merger sales at May's stores had been declining for several years and that the lag continued post-merger.  ¶¶5-7, 10-11, 62-65, 67, 70-73, 75-76.  Since at least 2003, sales at May stores had declined and the individual defendants were aware of the true financial condition of the former May stores as they touted increasing sales growth and earnings.  ¶¶62-65, 67, 69-76, 80-83.

Despite the individual defendants' contentions, the Company's false statements regarding expected earnings growth are not protected by the "bespeaks caution" doctrine or the PSLRA's safe-harbor for forward-looking statements.  Under the "bespeaks caution" doctrine, meaningful cautionary language can render misrepresentations or omissions immaterial.  *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 586 (S.D.N.Y. 2007).  Additionally, the PSLRA provides safe harbor protection to forward-looking statements if they are accompanied by meaningful cautionary statements identifying important factors that could cause results to differ materially from those in the forward-looking statements.  *Id.* (citing 15 U.S.C. §78u-5(c)(1)(A)).  Despite these general protections, there is an exception to the general rules.  There may be liability for forward-looking statements when (1) the forward-looking statement was made with actual knowledge that it was false; or (2) when the forward-looking statement misrepresents present facts. *Id.* (internal quotations omitted).  Statements regarding projections of future performance may be actionable if the speaker did not genuinely or reasonably believe the statements when they were made.  *Id.* (citing *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998).  Thus, the protections of the safe harbor provisions may survive only if defendants pointed to the principal contingencies that could cause actual results to depart from projections.  *Id.*

Here, plaintiff alleges that for several years prior to its acquisition by Macy's, May was suffering from a historical decline in sales, and that the sales lag continued after the merger. ¶¶3, 5-7, 62-65, 70. Plaintiff further alleges that the historical poor sales performance at May was well known to defendants via their positions with May or through May's public filings and the due diligence conducted by Macy's prior to the merger. ¶¶4, 62-65, 67. Defendants were also aware that sales at May's stores continued to lag post-merger continued, ¶¶5, 7, 10-11, 70-73, 75, affecting overall projections of comparable store sales growth. Therefore, Macy's' forward-looking statements cannot protect defendants from liability because defendants knew that their projections, which continually expressed that the Company's earnings and same-store sales were expected to increase as a result of the Merger, misrepresented the true condition of the continuing sales decline.

Moreover, defendants have failed to indicate what meaningful cautionary language existed in their forward-looking statements that would exculpate them from liability. *See* Defs.' Mem. at 22. In order to secure the protection of the PSLRA's safe harbor provision for forward-looking statements, the disclosure must include meaningful cautionary statements identifying the important factors that could cause results to differ dramatically from the forward-looking statements. *IAC*, 478 F. Supp. 2d at 586. Defendants have failed to demonstrate that there was appropriate language cautioning investors of the continued poor sales at former May stores and its affect on Macy's forecasted earnings.

### 2.    **Plaintiff Has Sufficiently Pled Scienter Under Rule 9(b) and the PSLRA**

Any private securities complaint alleging that a defendant made a false or misleading statement must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. §78u-4(b)(2). A plaintiff alleging fraud in a §10(b) action must plead facts rendering the inference of scienter *at least as likely as* any plausible opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2513 (2007). The strength

of an inference is not to be determined in a vacuum. Courts must consider a complaint in its entirety. *Id.* at 2509. The inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* A plaintiff can establish a strong inference of scienter by alleging facts that (1) show that the defendants had both motive and opportunity to commit the fraud or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Sufficient motive allegations include concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). In order to plead recklessness, a plaintiff must specifically allege that defendants had knowledge of facts or access to information contradicting their public statements. *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). Where a plaintiff alleges that defendants had access to contrary facts, plaintiff must identify the reports or statements containing that information. *Id.* at 309.

Here, plaintiff alleges that certain of the individual defendants realized concrete benefits as a result of the failure to disclose that the May's store integration was failing. In particular, plaintiff alleges that the individual defendants were aware that sales and the former May stores were declining, making the Company's projected earnings and financial statements false and misleading. ¶¶5-6, 10, 85-86, 88. Despite having access to information demonstrating the pre- and post-Merger sales lag at the former May's stores, the individual defendant caused or allowed the Company to report expected same-store sales growth and increased earnings, artificially inflating Macy's stock price. ¶¶7, 9-10, 12, 69-75, 80-83. Plaintiff alleges that while in possession of this material adverse information, the Insider Selling Defendants sold their personally held shares of Macy's stock at these artificially inflated prices and reaped huge financial rewards. ¶¶22-25, 33-38, 96. In fact, between March and April 2007, while stock prices were artificially inflated, the Insider Selling Defendants

- 20 -

sold over 1.1 million shares of Macy's stock for proceeds in excess of $53.8 million. ¶96. This concrete financial benefit – resulting from the Company's improper and misleading disclosures – is sufficient to create a strong inference of scienter.

Additionally, plaintiff alleges that prior to the Merger, the individual defendants had access to May's public financial disclosures which revealed that sales at May's stores were lagging. ¶¶62-64. Indeed, May's public financial filings revealed that it had suffered from a historical decline in sales dating back to 2003. ¶62. These public filings revealed that the sales lag at May's included low sales in ladies' and men's apparel brands and in the home store. ¶64. Moreover, May's financial statements revealed a decrease in store-for-store transactions. ¶¶62-63. Despite their awareness of May's history of declining sales, Macy's divestiture of May's key investments and the material affect that the Merger would have on Macy's financials, the individual defendants immediately touted the success of the Merger and raised the Company's earnings guidance. ¶67. These allegations constitute strong circumstantial evidence of conscious misbehavior or recklessness, and are therefore sufficient to create an inference of scienter.

### C.    The Individual Defendants Cannot Hide Behind the Business Judgment Rule to Avoid the Consequences of Failing to Act in the Best Interests of Macy's

At the pleading stage, defendants also claim the business judgment rule as a defense for their actions as directors and officers of Macy's. Defs.' Mem. at 24-25. Yet, the business judgment rule, which affords directors and officers the presumption that when making business decisions directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in the best interests of the company, does not bestow blanket protection. *Aronson*, 473 A.2d at 805.[19]    Breach of *either* the duty of due care or the duty of loyalty rebuts the presumption that

---

[19]    The business judgment rule is also an affirmative defense which is improperly raised in this pleading. *See Tower Air*, 416 F.3d at 238 (a court will generally not rely on an affirmative defense, such as the "business judgment rule," in order to dismiss complaint for failing to state claim for relief under Rule 12(b)(6)); *Palmer v. A. & L. Seamon, Inc.*, No. 94 Civ. 2968 (JFK), 1995 WL 2131, at *2

directors have acted in the best interests of the shareholders. *Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del. 1993), *aff'd by Cinerma, Inc., v. Technicolor, Inc.,* 636 A.2d 956 (Del. 1994); *Smith v. Van Gorkum,* 488 A.2d 858, 872 (Del. 1985). *See In re Abbott Labs. Derivative S'holder Litig.,* 325 F.3d 795, 809 (7th Cir. 2001) ("The totality of the complaint's allegations need only support a reasonable doubt of business judgment protection, not a 'judicial finding that the directors' actions are not protected by the business judgment rule.'") Plaintiff's Complaint more than sufficiently demonstrates, for the purposes of a motion to dismiss, that defendants breached both their duty of due care *and* duty of loyalty. ¶¶47, 49-51, 93-94, 96, 103. Thus, defendants' attempt to insert the business judgment rule as a preclusory shield to the avenues of liability sufficiently alleged in plaintiff's Complaint fails.

### D.    The Exculpatory Provision in Macy's Certificate of Incorporation Does Not Exempt the Individual Defendants from Liability

In seeking to avoid plaintiff's clear allegations, defendants assert that plaintiff's breach of fiduciary duty of care claims, to the extent that they are premised on allegations of negligence or gross negligence, are precluded by 8 Del. C. §102(b)(7). [20] Defs.' Mem. at 9. Section 102(b)(7), however, is also an affirmative defense. An affirmative defense simply cannot constitute grounds for dismissal for failure to state claim unless the affirmative defense appears on the face of the

---

(S.D.N.Y. Jan. 3, 1995) (rejecting arguments in favor of dismissal because "[e]ach of these arguments is in the nature of an affirmative defense rather than a neglected pleading requirement. ..").

[20]  Defendants attempt to insert Macy's Certificate of Incorporation and its section 102(b)(7) provision to preclude liability for certain breaches of their fiduciary duties. Defs.' Mem. at 9. Defendants own cite in support of this proposition, however, delineates the extent of its use in a motion to dismiss. Specifically, this Court may take judicial notice of the *existence* of this provision and not for the truth of the matter asserted. *Id.* citing *Logicom Inclusive, Inc. v. W.P. Stewart & Co.,* No. 04 Civ. 0604 (CSH), 2004 WL 1781009, at *1, *3 (S.D.N.Y. Aug. 10, 2004). Moreover, in considering a motion to dismiss for failure to state a claim, a district court *must limit itself to the facts stated in the complaint*, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999); *see Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991). Here, plaintiff has not referred to Macy's certificate anywhere in its Complaint.

complaint. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Tower Air*, 416 F.3d at 242 ("the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)."). In declining to dismiss plaintiff's complaint based on an exculpatory provision, the Delaware Chancery court in *Sanders v. Wang*, No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) stated:

> Because the nature of the defendants' breach of fiduciary duty remains unclear at this time, I may not now properly consider exculpatory provisions. The defendants will have the opportunity to present their affirmative defense as the case progresses. At this stage of the proceedings, I cannot conclude as a matter of law that the Board acted in good faith and that their actions constituted no more than mere carelessness.

*Id*. at *11. Therefore, a section 102(b)(7) defense should only be considered at this stage of the pleadings if it appears on the face of the Complaint or it is extremely clear the Complaint only alleges breaches of the duty of care. Neither is the case here as plaintiff has sufficiently alleged that defendants breached both their duty of due care *and* duty of loyalty. ¶¶47, 49-51, 93-94, 96. Section 102(b)(7) will support a motion to dismiss only where the *sole conceivable basis* of liability is a violation of the duty of care. *Emerald Partners v. Berlin*, 726 A.2d 1215, 1225-27 (Del. 1999), *aff'd*. 840 A.2d 641 (Del. 2003). Furthermore, §102(b)(7) only exculpates directors, not officers, and only for money damages, not equitable relief. *Id*.

### E.    Plaintiff Has Stated a Claim for Unjust Enrichment

Under Delaware law, a defendant is liable for unjust enrichment if he receives a benefit at another's expense. *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) ("'Unjust enrichment is defined as "'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience"'"). To adequately plead a claim for unjust enrichment, a plaintiff must allege: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy at law. *Jackson Nat'l Live Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).

Plaintiff alleges that the individual defendants were unjustly enriched because they received millions of dollars of unjust compensation while they caused the Company to report false and misleading statements in breach of their fiduciary duties. ¶¶22-38, 55. Plaintiff also alleges that the Insider Selling Defendants were unjustly enriched by selling their personally held share's of Macy's stock at artificially inflated prices for more than $53.8 million on the basis of material non-public information concerning the failing May stores integration. ¶¶22-25, 33-38, 96.

Thus, for the present purposes, plaintiff has adequately pled a claim for unjust enrichment.

### F.     Plaintiff Has Stated A Claim For Waste

Under Delaware law, "[t]he essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes .... It is common sense that a transfer for no consideration amounts to a gift or waste of corporate assets." *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979). *See also Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997). "Waste" is defined as "'an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.'" *White v. Panic*, 783 A.2d 543, 554 (Del. 2001). Most often the claim is based on a transfer of corporate assets that serves no purpose for the corporation or for which no consideration is received. *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000). In a claim for waste of corporate assets, a plaintiff needs to allege that the board "irrationally squander[ed] corporate assets." *White*, 783 A.2d at 554.

Plaintiff adequately alleges that throughout the Relevant Period, the individual defendants caused or allowed Macy's to issue false and misleading statements pertaining to its 10-Q and 10-K filings. ¶¶61, 69-76, 80-84. The individual defendants' wrongful conduct has forced the Company to: (i) spend significant amounts of money in defending itself in securities class actions filed by investors (¶91); (ii) experience a decline in market capitalization of over $3 billion (¶¶87, 90); and (iii) expend over $2 billion to repurchase its stock at prices that were artificially inflated as a result

of the individual defendants misconduct (¶¶79, 91).    Despite their misconduct, the individual

defendants obtained lavish executive compensation, bonuses, and stock options.    ¶¶22-38.    In light of

the above, plaintiff has adequately alleged a claim for corporate waste.    *See Michelson*, 407 A.2d at

217.    Indeed, given the inherent factual nature of claims for corporate waste, they are generally not

susceptible to dismissal at the pleading stage.    *Lewis*, 699 A.2d at 339 ("Consider for example

allegations that an arm's-length corporate transaction constitutes a waste of assets.    Such an

allegation is *inherently factual and not easily amenable to determination on a motion to dismiss

and indeed often not on a motion for summary judgment*.").

## VI.    CONCLUSION

Based on the foregoing, defendants' motion to dismiss should be denied in its entirety.[21]

DATED:  December 14, 2007                Respectfully submitted,

LAW OFFICES OF THOMAS G. AMON
THOMAS G. AMON


/s/ Thomas G. Amon
THOMAS G. AMON

500 Fifth Avenue, Suite 1650
New York, NY 10110
Telephone:  (212) 810-2431
Facsimile:  (212) 810-2427

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
CAROLINE A. SCHNURER
ASHLEY R. PALMER
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991

---

[21]  While plaintiff is confident that the Complaint satisfies the applicable pleading standards to defeat
defendants' motion, should the Court grant any part of defendants' motion or require more specific
pleadings, plaintiff respectfully requests that this Court permit amendment of the pleadings
consistent with Fed. R. Civ. P. 15(a) which provides that "leave shall be freely given when justice so
requires."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

BARRETT, JOHNSTON & PARSLEY, LLC
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile:  (615) 252-3798

Attorneys for Plaintiff

304472_4

## CERTIFICATE OF SERVICE

The foregoing document was served to counsel of record on December 14, 2007 by electronic mail through the Court's CM/ECF system and by Federal Express to the following:

George E. Barrett
Douglas S. Johnston, Jr.
Timothy L. Miles
BARRETT, JOHNSTON & PARSLEY, LLC
217 Second Avenue North
Nashville, TN 37201


Michael F. Borger
Michael E. Kreitman
Joann Nelson
MACY'S INC.
151 West 34th Street, 13th Floor
New York, NY 10001


John M. Newman, Jr.
Geoffrey J. Ritts
Michael A. Platt
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114


Arthur J. Margulies
JONES DAY
222 East 41st Street
New York, NY 10017


_/s/ Thomas G. Amon_____
THOMAS G. AMON