UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
PIRELLI ARMSTRONG TIRE                    )  Case No. 1:07-cv-05862-RJH
CORPORATION RETIREE MEDICAL               )
BENEFITS TRUST, Derivatively on Behalf    )  ECF
of MACY'S, INC.,                          )
                                          )
               Plaintiff,                )
                                          )
vs.                                       )
                                          )
TERRY J. LUNDGREN, KAREN M.               )
HOGUET, SARA LEVINSON, CRAIG E.           )
WEATHERUP, JOSEPH NEUBAUER,               )
JOSEPH A. PICHLER, JOYCE M. ROCHE,        )
MEYER FELDBERG, MARNA C.                  )
WHITTINGTON, KARL M. VON DER              )
HEYDEN, WILLIAM P. STIRITZ, JOEL A.       )
BELSKY, DENNIS J. BRODERICK,              )
THOMAS G. CODY, THOMAS L. COLE,           )
JANET E. GROVE and SUSAN D.               )
KRONICK,                                  )
                                          )
               Defendants,               )
                                          )
- and -                                   )
                                          )
MACY'S, INC., a Delaware corporation,     )
                                          )
               Nominal Defendant.        )
------------------------------------------------------------- x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE SHAREHOLDER DERIVATIVE COMPLAINT**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    The Complaint Should Be Dismissed For Lack of a Pre-Suit Demand ....................... 2

        A.    Plaintiff Does Not Show That the Directors Have a Disqualifying Interest ..................................................................................... 2

            1.    There are no particulars showing a substantial likelihood of liability for the Directors regarding Macy's disclosures ................................................................................. 2

                (a)    The board in general ................................................................. 2

                (b)    Membership on committees ...................................................... 4

            2.    There are no particulars showing that the Directors have a substantial likelihood of liability for personal stock sales ................................................................................................. 5

        B.    Plaintiff Does Not Show The Directors Lack Independence Due To "Personal and Business Entanglements" ............................................ 6

        C.    Plaintiff Fails To Show That the Stock Repurchase Was Likely Not the Product of a Valid Business Judgment .............................................. 7

        D.    The Totality of the Circumstances Does Not Excuse a Demand ..................... 8

    II.    The Complaint Fails to State a Claim Upon Which Relief Can Be Granted ............................................................................................................... 8

        A.    The Complaint Fails to Satisfy Rule 9(b) and the PSLRA ............................. 8

        B.    The Complaint Fails to Overcome the Business Judgment Rule ..................... 9

        C.    The Claims for Waste and Unjust Enrichment Should Be Dismissed ................................................................................................. 10

    III.    The Complaint Should Be Dismissed With Prejudice .............................................. 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Caviness v. Evans*,
    229 F.R.D. 354 (D. Mass. 2005) .................................................................................. 5

*Confederate Mem. Ass'n, Inc. v. Hines*,
    995 F.2d 295 (D.C. Cir. 1993) ..................................................................................... 10

*Ferre v. McGrath*, No. 06 Civ. 1684 (CM),
    2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ............................................................ 3, 9

*Fink v. Komansky*, No. 03-CV-0388(GBD),
    2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ................................................................ 8

*In re Biopure Corp. Derivative Litigation*,
    424 F. Supp. 2d 305 (D. Mass. 2006) ........................................................................ 3, 4

*In re Forest Laboratories, Inc. Derivative Litig.*,
    450 F. Supp. 2d 379 (S.D.N.Y. 2006) .......................................................................... 4

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007) .......................................................................... 2

*In re Keyspan Corp. Sec. Litigation*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................... 3, 4

*In re Pfizer Inc. Derivative Sec. Litig.*,
    503 F. Supp. 2d 680 (S.D.N.Y. 2007) ....................................................................... 8, 9

*Loveman v. Lauder*,
    484 F. Supp. 2d 259 (S.D.N.Y. 2007) .......................................................................... 7

*Martin v. Dickson*, No. 03-7917, 100 Fed. Appx. 14,
    2004 WL 1205185 (2d Cir. June 2, 2004) ................................................................. 10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ......................................................................................... 8

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ......................................................................................... 9

CLI-1577643

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES
(Continued)

*Xerion Partners, I LLC v. Resurgence Asset Management, LLC*,
    474 F. Supp. 2d 505 (S.D.N.Y. 2007) ................................................................................. 9

### STATE CASES

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ...................................................................................................... 7

*Beam v. Stewart*,
    845 A.2d 1040 (Del. 2004) .................................................................................................... 6

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) ....................................................................................... 2, 4, 5

*Harbor Finance Partners v. Huizenga*,
    751 A.2d 879 (Del. Ch. 1999) ............................................................................................... 6

*In re New Valley Corp. Derivative Litigation*, No. 17649,
    2001 WL 50212 (Del. Ch. Jan. 11, 2001) ............................................................................. 6

*In re Oracle Corp. Derivative Litig.*,
    824 A.2d 917 (Del. Ch. 2003) ............................................................................................... 6

*In re Walt Disney Co. Derivative Litig.*,
    731 A.2d 342 (Del.Ch. 1998), *overruled on other grounds*
    *by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................................................................... 7

*International Equity Capital Growth Fund, L.P. v. Clegg*, No.
    14995, 1997 WL 208955 (Del. Ch. Apr. 22, 1997) .............................................................. 6

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .................................................................................................... 9

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
    794 A.2d 1211 (Del. Ch. 2001) ............................................................................................. 6

## TABLE OF AUTHORITIES

Page(s)

### STATE CASES
(Continued)

*Rattner v. Bidzos*, No. 19700,
   2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ........................................................................ 4

### STATUTES and RULES

Fed. R. Civ. P. 9 ............................................................................................................................ 8

Fed. R. Civ. P. 12 .......................................................................................................................... 2

Del. Code tit. 8, § 102 ............................................................................................................ 2, 3, 9

**PRELIMINARY STATEMENT**

In our opening brief, we pointed out the complete absence of particularized factual allegations to support the crux of the Complaint: that Macy's directors knew or believed that Macy's first-quarter 2007 sales projections could not be realized, but nonetheless allowed those projections to be issued. (Def. Br. 10-14.) The Complaint, we noted, has no particulars about:

- What, if anything, the directors had to do with the preparation of the projections;

- What review, if any, the directors had of the projections before they were issued; or

- Any data, information or communications provided to any of the directors that supposedly led them to believe the projections could not be achieved.

So far as the Complaint shows, nobody ever commented to any director that the sales projections were illegitimate, or provided any of them with data calling into question those projections.

The same lack of particularity afflicts the allegations about Macy's early 2007 stock buyback. (Def. Br. 19-21.) We explained that the Complaint is mute about:

- The process by which the board decided to authorize the buyback;

- The data the board considered and the advice it received in making that decision; and

- The reasons for the buyback.

Without any of these particulars, the Complaint falls far short of showing that the directors face a substantial likelihood of liability on these derivative claims, which means a pre-suit demand was required. The same factual gaps also mean the Complaint states no actionable claims.

Plaintiff acknowledges the need to plead with particularity (Opp. 6), but then tries to dodge it, inartfully. Over and over, plaintiff urges the Court to "infer" wrongful intent based on the directors' titles or on hindsight (*id.* at 8, 9, 10, 12), or to "impute" to them knowledge of unspecified negative information supposedly held by unidentified people (*id.* at 7-8, 9). And of course, plaintiff wants the Court not to hold it to the strict pleading standard, because it has not taken discovery. (*Id.* at 6.)

Delaware law squarely rejects those arguments, especially where, as here, a plaintiff failed to use available pre-suit means, such as books-and-records requests, to search for required particulars. This plaintiff has "failed to heed the numerous admonitions . . . for derivative plaintiffs to obtain books and records before filing a complaint," with predictable results: "When the case most cries out for the pleading of real facts" – like the board's knowledge of and participation in the first-quarter 2007 sales projections and the deliberative process behind the buyback authorization – "the complaint is at its most cursory, substituting conclusory allegations for concrete assertions of fact." *Guttman v. Huang*, 823 A.2d 492, 493-94 (Del. Ch. 2003) (dismissing derivative complaint with prejudice for lack of particularized allegations to excuse demand).

These failings, and the others identified in our first brief, require dismissal with prejudice.[1]

## ARGUMENT

I.   **The Complaint Should Be Dismissed For Lack of a Pre-Suit Demand.**

   A.   **Plaintiff Does Not Show That the Directors Have a Disqualifying Interest.**

   1.   **There are no particulars showing a substantial likelihood of liability for the Directors regarding Macy's disclosures.**

   (a)   **The board in general.**

These key facts stand unrebutted:

- There is no challenge at all to disclosures concerning Macy's actual financial performance – such as, for example, the strong actual results for fourth quarter and full year 2006, reported in February 2007. (*See* Compl. ¶ 8.) All there is is a claim that Macy's should have been gloomier in its outlook for 2007's first quarter.

- Plaintiff offers no particulars at all that the directors had anything to do with the specifics of the 2007 first-quarter guidance.

- Much less does plaintiff provide factual particulars suggesting that any director believed the guidance to be illegitimate.

---

[1] Plaintiff wrongly objects to several exhibits filed with our motion, including Macy's certificate of incorporation and SEC filings. (Opp. 2 n.1.) This Court may consider certain types of documents outside the pleadings on a motion pursuant to Fed. R. Civ. P. 12(b)(6). (Def. Br. 2 n.3.) These include SEC filings, documents "integral" to the complaint, and documents of which judicial notice can be taken. *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 585 & n.5 (S.D.N.Y. 2007). Significantly, plaintiff does not dispute that Macy's filed the referenced documents with the SEC, or that Macy's charter indeed has a § 102(b)(7) exculpatory provision.

- The Complaint says nothing about the assumptions behind the projections, or how the projections were prepared, or any facts showing directorial knowledge of shortcomings in either the assumptions or the process.

- Plaintiff asserts repeatedly that the directors were trying to conceal that performance of the former May stores had been "lagging," but that is precisely what Macy's press releases and public filings *did* say. (Def. Br. 3 n.5, 22.)

Lacking any of these particulars, plaintiff instead argues, relying on *In re Keyspan Corp. Securities Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003), and *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305 (D. Mass. 2006), that Macy's directors should be "imputed" with knowledge that first-quarter projections could not be met because "successful integration of May stores and comparable store sales growth was a primary focus in generating revenue and determining Macy's financial projections." (Opp. 7.) That argument fails. Plaintiff never says *whose* knowledge should be imputed to the directors, or identifies *anyone* at Macy's, let alone the directors, who thought the projections were unreasonable. Besides, a substantial likelihood of director liability could *never* be based on a claim that someone else's knowledge should be put on the directors, because only intentional misconduct falls outside the shield of the § 102(b)(7) provision.[2] Finally, it does not follow that, because the merger integration was important to Macy's, any shortfall in quarterly sales projections must necessarily have been known (or even knowable) in advance.

Neither *Keyspan* nor *Biopure* helps plaintiff. To begin with, their rationale has been rejected in this Court. *See Ferre v. McGrath*, No. 06 Civ. 1684 (CM), 2007 WL 1180650, at *6 (S.D.N.Y. Feb. 16, 2007) ("Allegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law – *even where, as here, the plaintiff alleges that the matters in suit relate to the corporation's 'core' business*.") (emphasis added). Moreover, *Keyspan* concerned inferences of scienter in a securities fraud case – not imputation as a basis for demand futility under Delaware law, 383 F. Supp. 2d at 381, and what's more, it cast aside the assertion that

---

[2] Plaintiff does not address the Delaware caselaw holding that a § 102(b)(7) provision requires a plaintiff seeking to excuse demand to satisfy a scienter-based standard. (Def. Br. 8-9.)

-3-

"defendants must be charged with knowledge of activities at [the company] by virtue of their high-level positions." *Id.* at 387.  Although the court cited three cases imputing knowledge to defendants, it noted that those cases involved factual allegations of "circumstances far more suggestive of [the defendants'] direct access to such information." *Id. Biopure* did treat the entire board as having knowledge, but only because the alleged misstatements involved the failure to obtain FDA approval for the company's primary product, a catastrophic result that threatened Biopure's continued viability.  424 F. Supp. 2d at 307-08; *see In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 392-93 (S.D.N.Y. 2006) (distinguishing *Biopure*).  Here, by contrast, there was no such catastrophic result – Macy's missed its first-quarter 2007 sales projections by less than two percentage points, and actually met its projection for earnings per diluted share.  (Def. Br. 4.) Macy's remains a profitable, viable company even after that narrow miss in 2007's first quarter.

### (b) Membership on committees.

The same factual barrenness afflicts the argument that Audit Committee members face a significant likelihood of personal liability.  All plaintiff does is cite the Committee charter, which says the committee should "[d]iscuss the type of information to be provided and the type of presentation to be made in connection with the Company's . . . earnings guidance."  (Compl. ¶ 56; Opp. 12 n.11.)  But it does not follow from that allegation that (a) the Committee reviewed the first-quarter same-store sales (not earnings) projection; or (b) the Committee was provided any data or information suggesting the projection was unachievable, but approved it anyway.

To establish that Audit Committee members face a substantial likelihood of liability, a plaintiff must "allege with particularity what information the directors knew and how they acquired such knowledge" showing that they knew or recklessly disregarded material misstatements. *Rattner v. Bidzos*, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003).  The Complaint's failure to do so is fatal. *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003) (requiring particularized facts as

to "why [the directors] would have perceived the accounting irregularities").[3]

### 2. There are no particulars showing that the Directors have a substantial likelihood of liability for personal stock sales.

For starters, demand cannot be excused based on allegations about directors' stock sales, because only 3 of 10 directors (and only 2 of the 9 outside directors) are alleged to have sold.

More fundamentally, though, the Complaint fails to show a substantial likelihood of liability for the stock sales for the same reason it fails to make that showing as to the first-quarter guidance: the utter absence of particulars showing the directors believed the guidance was not achievable, which is the supposed inside information that plaintiff says caused the stock price to be "artificially inflated." While plaintiff says the Complaint "has shown what adverse, non-public information defendants knew when they sold their shares and how they obtained this information" (Opp. 10), that pleading in fact does no such thing. (*See* Compl. ¶¶ 40, 43, 60, 61, 96, 101.) It does not say what specific information each director learned about the same-store sales guidance, when, how, or why the information was material. Instead, plaintiff makes only generic assertions that defendants had "adverse, non-public information about the business of Macy's including its finances, markets and present and future business prospects." (*Id.* ¶ 40.) That is not enough to show the directors sold stock "'on the basis of, and because of, adverse material non-public information,'" which is what Delaware law requires. (Def. Br. 14 (quoting *Guttman*, 823 A.2d at 505).)

Plaintiff also ignores its obligation to plead particularized facts regarding the timing of the trades in relation to permitted trading periods, or showing whether and how the timing of those trades was consistent or inconsistent with the directors' trading activity in prior years. (Def. Br. 15.) Leaving aside for purposes of argument the only inside director (Lundgren), there is absolutely nothing suspicious about the two outside directors who sold, Levinson and Weatherup. The 7,000

---

[3] *See also Caviness v. Evans*, 229 F.R.D. 354, 359 (D. Mass. 2005) (noting the absence of any "particularized allegations regarding the knowledge of any member of the Audit Committee" and rejecting plaintiff's contention that knowledge can be inferred from a "particularized pleading of . . . Audit Committee duties") (internal quotations omitted) (applying Delaware law).

shares that they each sold in March-April 2007 (a small portion of their total holdings) were acquired through the same-day exercise of stock options that were about to expire in May 2007. (*See* Levinson 3/22/07 Form 4, attached as Ex. 1 to the Supplemental Declaration of Michael A. Platt ("Suppl. Platt Decl."); Levinson 4/10/07 Form 4, Suppl. Platt Decl. Ex. 2; Weatherup 3/16/07 Form 4, Suppl. Platt Decl. Ex. 3; 4/04/07 Form 14-A at 5, 19, Suppl. Platt Decl. Ex. 4.) There is nothing suspicious about exercising options that are about to expire.

The stock-sale allegations provide no basis for excusing demand.

### B. Plaintiff Does Not Show The Directors Lack Independence Due To "Personal and Business Entanglements."

Plaintiff insists the directors lack independence because of business, personal, and employment relationships. (Opp. 12-13.) We explained why this is not so (Def. Br. 17-19), and the opposition adds nothing of substance. What plaintiff identifies are normal business and social connections with no bearing on the matter at hand; that does not show a disqualifying subservience. *Beam v. Stewart*, 845 A.2d 1040, 1051-52 (Del. 2004).[4] Were such relationships enough, the independence of nearly all directors of public companies would be undermined because directors typically have business and social connections. Plaintiff's cases are inapposite.[5]

---

[4] In our opening brief, we pointed out the significant differences between the relationships alleged here and those alleged in *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003). (Def. Br. 18 n.14.) Plaintiff offers nothing in response.

[5] In *In re New Valley Corp. Derivative Litigation*, No. 17649, 2001 WL 50212, at *2, *7 (Del. Ch. Jan. 11, 2001), the directors had "direct financial or employment relationships" with the company on the other side of the challenged transaction. Likewise, in *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1231 (Del. Ch. 2001), the director in question was on the boards of two companies and the demand would have required him to determine whether one should sue the other. Because the director owed a duty of loyalty to each company, he could not "qualify as an independent director under the reasoning of our corporation law because 'extraneous considerations' cloud his mind." *Id.* In *Int'l Equity Capital Growth Fund, L.P. v. Clegg*, No. 14995, 1997 WL 208955, at *5 (Del. Ch. Apr. 22, 1997), the director in question had been appointed by the controlling shareholder, who was interested; had his compensation set by a committee, which included the controlling shareholder; and benefited from certain transactions that he approved of, while the controlling shareholder benefited from other similar approved transactions. Finally, in *Harbor Finance Partners v. Huizenga*, 751 A.2d 879, 881, 886-89 (Del. Ch. 1999), the director in question was a stockholder in the company acquired in the challenged transaction, had significant business relationships with the largest stockholder in that company (who was also a defendant director) for over 30 years, and was that stockholder's brother-in-law.

-6-

In any event, a director's lack of independence from another director is relevant only if one of them faces a substantial likelihood of liability. Because plaintiff has failed to allege with particularity that any director faces such exposure, lack of independence is not relevant to the demand futility analysis. *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 355 (Del. Ch. 1998), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

### C. Plaintiff Fails To Show That the Stock Repurchase Was Likely Not the Product of a Valid Business Judgment.

Plaintiff seems to concede that the board's authorization of Macy's stock repurchase program could not have constituted self-dealing because none of the directors is alleged to have stood on the other side of a repurchase. It nonetheless continues to insist that the authorization was not a valid business judgment because the board "knew or should have known" that Macy's stock price was artificially inflated by the unattainable first-quarter sales guidance. (Opp. 13-14.) That argument falters for the same reason as the claims about the projections and the insider sales – the absence of particulars showing that any director (much less a majority) believed the guidance to be unattainable but still authorized its publication. Plaintiff makes no effort to satisfy its "substantial burden" as to *Aronson*'s second prong, and does nothing to convince the Court that this is one of those "extreme cases" meriting an abrogation of the demand requirement. (*See* Def. Br. 19-21.)[6] *See Loveman v. Lauder*, 484 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2007) (second *Aronson* prong not satisfied by conclusory allegations that stock repurchase was "disadvantageous" to the company).[7]

---

[6] Plaintiff asks the Court not to consider the transcript of a February 27, 2007 analyst call in which Macy's explained the business reason for its stock repurchase program. (Opp. 2 n.1.) That business reason is set forth in any event in Macy's SEC filings, of which the Court may take judicial notice. (*See* 2/27/07 8-K, Platt Decl. Ex. L ("We believe that repurchasing shares is a very productive use of excess cash and balance sheet capacity.").)

[7] The Complaint and opposition make several references to Macy's sale of "May's greatest financial hope, its Bridal Group." (Opp. 1; Compl. ¶¶ 4, 65.) But neither the Complaint nor the brief ever says why the Bridal Group was "May's greatest financial hope," or offers any fact to back up that assertion. Nor does plaintiff try to link that decision to any alleged fiduciary breach. No doubt the only reason the Bridal Group is mentioned at all is that Macy's sold it post-merger and plaintiff is looking for something to complain about.

-7-

Moreover, as noted in our first brief, the Complaint provides zero information about the board's process in deciding to approve the repurchase (Def. Br. 19-21), and the opposition offers nothing to overcome the deficiency.

### D. The Totality of the Circumstances Does Not Excuse a Demand.

Sensing analytical defeat, plaintiff retreats to a musky notion that the "totality of the circumstances" excuses demand. (Opp. 14-16.) But the whole here is not greater than the sum of its parts.[8]  Just as each of the individual factors fails to undermine disinterestedness or independence, the combination fails as well.[9]

## II. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

Fundamentally, the Complaint fails to state an actionable claim for the same reasons demand is not excused:  an utter absence of factual allegations on the key points underpinning the claims.

### A. The Complaint Fails to Satisfy Rule 9(b) and the PSLRA.

Plaintiff seems to agree that the Complaint sounds in fraud and must therefore comply with Rule 9(b) and, as to the § 10(b)/Rule 10b-5 claim, the PSLRA too.  It comes nowhere close.  All the claims rest on the assertion that the defendants believed the first-quarter sales guidance to be insupportable (or, more generally, that the merger integration was "failing"), but issued the guidance anyway.  Where, as here, "plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  Moreover, "to survive a motion to dismiss, plaintiff 'needs to specify the internal reports, who prepared them and when, how firm the numbers were or which

---

[8] For example, plaintiff insists the board would not sue the Compensation Committee because to do so would jeopardize the board's pay. (Opp. 15.)  We addressed this argument in our opening brief. (Def. Br. 16-17.)  Plaintiff has not responded.  Then there is the assertion, repeatedly rejected in Delaware (*id.* 10 n.9) that the directors are interested because insurance would not cover a lawsuit they filed.  Plaintiff's sole rejoinder is inapplicable Ohio case law. (Opp. 15 n.17).

[9] *In re Pfizer Inc. Deriv. Sec. Litig.*, 503 F. Supp. 2d 680, 686 (S.D.N.Y. 2007) ("I do not see how aggregating a number of factors, none of which excuses demand, can somehow excuse demand"); *see also Fink v. Komansky*, No. 03 CV 0388 (GBD), 2004 WL 2813166, at *5 (S.D.N.Y. Dec. 8, 2004) ("totality" of "these allegations amount to mere conclusions that do not rise to the level of particularity necessary to plead demand futility").

company officers reviewed them.'" *Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC*, 474 F. Supp. 2d 505, 517 (S.D.N.Y. 2007). Here, the Complaint identifies no internal document that satisfies these requirements, *i.e.,* that suggests that Macy's sales projections were believed to be unachievable when they were issued, or that, when the projections were made, defendants believed the merger integration was "failing."[10] Nothing in the opposition brief counters this deficiency.

At bottom, plaintiff's ***only*** basis for claiming that Macy's projections were intentionally misleading is that Macy's ultimately missed some (but not all) of those projections in May 2007. That is classic, impermissible "fraud by hindsight." *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[Plaintiff's] technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of alleging fraud by hindsight.") (internal quotations omitted).

### B.  The Complaint Fails to Overcome the Business Judgment Rule.

Plaintiff's main response to our substantive reliance on the business judgment rule is to argue that the § 102(b)(7) provision may not be invoked on a motion to dismiss. That is wrong.

The Delaware Supreme Court in *Malpiede v. Townson*, 780 A.2d 1075, 1093-94 (Del. 2001), made clear that where, as here, a plaintiff's loyalty claims fail, it is proper to raise a § 102(b)(7) provision on a motion to dismiss the remaining duty-of-care claims. Courts often look to exculpation provisions to determine whether demand should be excused, and have not hesitated to throw out duty-of-care claims on motions to dismiss pursuant to such provisions.[11]

---

[10] Plaintiff concedes that Macy's disclosed that sales at former May stores continued to lag through the fourth quarter of 2006, yet still argues that Macy's somehow improperly failed to disclose that "May had a history of declining same store sales." (Opp. 1, 8, 9, 14, 19.) Poppycock. Until August 2005, May was a public company issuing earnings releases. The public was aware that May's sales had been lagging as far back as 2003. (*See* Compl. ¶¶ 62-64.) Moreover, Macy's never announced that customers had "rejected" the merger or that the integration had "failed," as plaintiff breathlessly alleges – what Macy's actually announced was that in a single quarter, it had missed projected same-store sales by a matter of basis points, while still achieving overall earnings within the projected range. (*See* 5/10/07 8-K, Platt Decl. Ex. I; 5/16/07 8-K, Platt Decl. Ex. J.)

[11] *Pfizer Inc. Deriv. Sec. Litig.*, 503 F. Supp. 2d at 685 & n.11; *Ferre*, 2007 WL 1180650, at *8 ("the court may take judicial notice of the existence of this [§ 102(b)(7)] provision").

-9-

### C. The Claims for Waste and Unjust Enrichment Should Be Dismissed.

There was no transfer of value for no consideration, so the waste claim fails.  (Def. Br. 25.) Plaintiff complains defendants were paid but failed in their fiduciary duties (Opp. 24-25), but does not allege, or argue, that defendants provided no value to Macy's for their services.  The boilerplate unjust enrichment claim also fails.  (Opp. 23-24.)  Plaintiff does not explain how compensation was so wrongly paid to defendants that it offends equity.  In addition, plaintiff concedes it must plead facts showing defendants were unjustly enriched "at [Macy's] expense."  (Opp. 23.)  Plaintiff bases its claim largely on defendants' stock sales, but never explains how those sales harmed Macy's.

### III. The Complaint Should Be Dismissed With Prejudice.

Plaintiff already amended once, after our August 20, 2007 letter to the Court requesting a pre-motion conference.  Then, via our motion, it was given notice of the new Complaint's defects and decided to stand on it rather than amend again.  It has not filed a motion to amend, and has not proffered a further amended pleading, much less one that would pass muster.  The law does not require, or countenance, deference to plaintiff's informal tail-end, footnote request (Opp. 25 n.21).[12]

### CONCLUSION

The Complaint is terminally insufficient and should be dismissed with prejudice.

Dated:  January 7, 2008                              Respectfully submitted,

                                                     *s/ John M. Newman, Jr.*
                                                     John M. Newman, Jr. (JN-5426)
                                                     Geoffrey J. Ritts (GR-4270)
                                                     Michael A. Platt (MP-7423)
                                                     JONES DAY
                                                     North Point

---

[12] *Martin v. Dickson*, No. 03-7917, 100 Fed. Appx. 14, 16, 2004 WL 1205185, at *2 (2d Cir. June 2, 2004) ("because [plaintiff] did not formally request leave to amend, and because he has not indicated that he will be able to properly state a cause of action in an amended complaint, leave to amend is denied"); *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("a bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought, *cf.* Fed. R. Civ. P. 7(b) – does not constitute a motion within the contemplation of Rule 15(a)").

901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
jmnewman@jonesday.com
gjritts@jonesday.com
maplatt@jonesday.com

Arthur J. Margulies (AM-7777)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
ajmargulies@jonesday.com

*Attorneys for Terry J. Lundgren, Karen M. Hoguet, Sara Levinson, Craig E. Weatherup, Joseph Neubauer, Joseph A. Pichler, Joyce M. Roche, Meyer Feldberg, Marna C. Whittington, Karl M. von der Heyden, William P. Stiritz, Joel A. Belsky, Dennis J. Broderick, Thomas G. Cody, Thomas L. Cole, Janet E. Grove, and Susan D. Kronick*

-11-

**CERTIFICATE OF SERVICE**

The foregoing document was served on counsel of record on January 7, 2008 by electronic mail through the Court's CM/ECF system and by U.S. Mail to the following:

Thomas G. Amon
Law Offices of Thomas G. Amon
500 Fifth Avenue, Suite 1650
New York, New York  10110
Telephone:  (212) 810-2431
Facsimile:  (212) 810-2427
Email:  tamon@amonlaw.com

Brian J. Robbins
Jeffrey P. Fink
Ashely R. Palmer
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, California  92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
Email:  notice@ruflaw.com

George E. Barrett
Douglas S. Johnston, Jr.
Timothy L. Miles
Barrett, Johnston & Parsley, LLC
217 Second Avenue North
Nashville, Tennessee  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

Mitchell F. Borger
Michael E. Kreitman
Joann Nelson
Macy's, Inc.
151 West 34th Street
13th Floor
New York, New York  10001

*s/ Arthur J. Margulies*
Arthur J. Margulies, Esq.

CLI-1577643